WILLIAM ADAMS *versus* SAMUEL LARRABEE.

Where the State has conveyed to A. 5000 acres of the south-west corner of a township of land, and to B. the remainder, 9000 acres, which last tract was afterwards divided amongst several owners, the assessment of a State tax, describing the township in two parts, as "S. W. 1-4 range 4, No. 6," and "3-4 range 4, No. 6," is void for uncertainty.

An assessment of the township *in solido*, designating the number and range, would have been good, *it seems*.

The description of real estate assessed must be definite and certain, or refer to something by which it can be made certain.

WRIT OF ENTRY to recover a tract of land in township No. 6, in range 4, north of the Lottery lands, described by metes and bounds, with a count for mesne profits.

The facts were reported by APPLETON, J.   Under a resolve of the Legislature of Massachusetts, passed Feb. 26, 1808, the agents named therein conveyed to George Ulmer and others a square tract of land in the south-west corner of township 6, containing 5760 acres, which said grantees and those claiming under them have since held.

In 1831, the State conveyed the remainder of the township, containing 9992 acres, to Waterston & Pray; and from them, through various conveyances, the demandant, in 1836, acquired title to one-eighth in common of said remainder. Partition has been made, and, since 1849, the demandant has held his share in severalty, and this is the land described in his writ.

The township was assessed for State taxes in 1854 and 1855, and the taxes partially paid by sundry persons; and, on Sept. 24, 1856, a portion of the tract, including the demanded premises, was sold, after being duly advertised, to pay the balance of the taxes for those years, and conveyed to G. W. Larrabee, who conveyed to the tenant, Nov. 10, 1857.

The case turned upon the validity of the tax, the description in the tax Act being as follows:—"S. W. 1-4 No. 6, R. 4, N. Bingham purchase."   "3-4 No. 6, R. 4, N. Bingham purchase."

*W. C. Crosby,* for demandant, cited *Smith* v. *Bodfish,* 27 Maine, 394; 40 Maine, 160; 25 Maine, 359.   Tax officers are to be held to a strict compliance with the law.   The tax sale is void for uncertainty in the description in the assessment.   "3-4 of No. 6, R. 4," may or may not include the premises demanded.   If designed to refer to the land sold to Waterston & Pray, it is erroneous in including too large a proportion of the township.   They purchased less than two-thirds; to tax it as three-fourths is a bad assessment. *Barker* v. *Blake,* 36 Maine, 433.

*Rowe & Bartlett,* for the tenant, argued that the demand-
ant had forfeited his title by non-payment of the tax of 1854.
Stat. 1849, c. 133, § § 4–6; *Hodgdon* v. *Wight,* 36 Maine,
326. It is too late to object to the inaccuracy of the descrip-
tion, after the demandant and all the other owners have as-
sented to its correctness, by paying taxes assessed on the
same land with the same description, from 1841 to 1854.

The opinion of the Court was drawn up by

DAVIS, J.—Pursuant to a Resolve passed by the Legisla-
ture of Massachusetts in 1808, a square tract of land, in
the south-west corner of township number 6, in range 4,
north of the Bingham purchase, containing 5760 acres, was
conveyed to the Duck Trap Bridge Corporation.

In 1831, this State sold the remainder of the township,
containing 9992 acres to Waterston & Pray; and the de-
mandant subsequently acquired a title to one-eighth part of
it, which was set off to him in severalty by his co-tenants.

In 1856, the whole of the 9992 acres, excepting three pub-
lic lots reserved, was sold by the State treasurer to the ten-
ant, as having been forfeited to the State on account of the
non-payment of the State tax for the year 1854. There
were also unpaid taxes for the county of Penobscot; nor had
the State tax for 1855 been paid.

But the only question material to the present case is that
of the validity of the assessment of the State tax for 1854.
For that tax remained unpaid more than "two years next
after the date of the assessment." If it was legally assessed,
the whole tract became forfeited, and the State acquired a
title thereto, "perfect and indefeasible," on the fifteenth day
of April, 1856. Laws of 1849, c. 133, § 6. If so, whether
the sale to the tenant was valid, or invalid, the demandant
cannot recover. For he is not entitled to recover, unless
the title and right of entry is in himself.

On the other hand, if the assessment was invalid, there
was no forfeiture to the State; the sale to the tenant was
illegal; and the demandant is entitled to recover.

Adams *v.* Larrabee.

Prior to 1841, the township was assessed as follows:—

"Part of No. 6, range 4, north of the Bingham Purchase, granted to Duck Trap Bridge Corporation, $————." "Part of No. 6, range 4, north of the Bingham Purchase, other than that granted to Duck Trap Bridge Corporation, $————."

After 1841, and in 1854 and 1855, the assessment was as follows:—

"S. W. 1-4, range 4, No. 6, north of the Bingham Purchase, $————." "3-4, range 4, No. 6, north of the Bingham Purchase, $————."

Is this description sufficient? If the assessment had been upon the whole township *in solido,* designating the number and range, it would have been good. In such case each owner could have computed the amount due from him for his part. But one-fourth part was less than that granted to the Duck Trap Bridge Corporation. Was it all embraced in that? Or was a portion of it included in the other part? And where was the dividing line? The two portions were taxed different sums per acre. How could any one owner ascertain whether his part was in the *one-fourth,* or in the *three-fourths?* And, if not, how could he ascertain the amount of his tax? And, in case of sale, how could the State Treasurer determine what part to sell, or the purchaser ascertain what portion he had bought?

It is obvious that an assessment so made is uncertain on the face of it; it refers to nothing by which it can be made certain. It leaves the State Treasurer without power to enforce the tax against the several owners, or even to inform them of the amount. Such an assessment, and all the proceedings under it, are invalid. According to the agreement of the parties, the tenant must be defaulted.

TENNEY, C. J., and APPLETON, CUTTING, MAY, and KENT, J. J., concurred.