MILLER, PLAINTIFF, v. MURPHY ET AL., DEFENDANTS.

No. 8650

Submitted September 19, 1946. Decided December 12, 1946.

175 Pac. (2d) 182

Mr. Arthur P. Acher, of Helena, and Mr. Fred W. Schilling, of Missoula, for appellants.

Mr. Krest Cyr and Mr. Edward T. Dussault, both of Missoula, for Savage estate.

Mr. E. C. Mulroney and Mr. Leon Bulen, both of Missoula, for Cummings estate.

MR. CHIEF JUSTICE LINDQUIST delivered the opinion of the Court.

Appeal from a judgment quieting title in certain real property known as the Housum Placer Mining claim in Missoula county.

The Plaintiff Ed Miller in a quiet title action, by complaint in usual form, claimed an undivided 2/16ths interest in the property and alleged that the defendant R. C. Dempster had operated the placer mine on said property during 1940, 1941 and

1942 and had deposited royalty payments therefrom in the First National Bank at Missoula in the sum of $12,900 to which Miller claimed his proportionate share.

Various of the defendants named in the complaint appeared in the action claiming interests in the property and royalties.

John L. Maloney and wife by answer and cross-complaint claimed an undivided 4/16ths interest in the property and royalties.

M. D. Flynn, surviving executor of the estate of Katherine Cummings, deceased, by answer and cross-complaint claimed an undivided 2/16ths interest in the property and royalties.

Azelie A. Savage, as administratrix of the estate of Sophia Savage, deceased, by answer and cross-complaint claimed an undivided 2/16ths interest in the property and royalties.

John L. Maloney and wife filed an answer to the cross-complaint of Michael Flynn as executor of the estate of Katherine Cummings, deceased, denying that the Cummings estate had any interest in the property and alleging that the Housum Placer was abandoned by the executor and further alleging that Missoula county on June 12, 1925, acquired by tax deed the 2/16ths interest formerly owned by the Cummings estate and thereafter on April 28, 1926, Maloney acquired this interest from the county by purchase and quitclaim deed, that Maloney had acquired title by adverse possession, that the executor was guilty of laches, that the Cummings estate was estopped from now claiming any interest in the property, and pleaded statutes of limitations.

John L. Maloney and wife likewise filed an answer to the cross-complaint of Azelie A. Savage, administratrix of the estate of Sophia Savage, deceased, denying that the Savage estate had any interest in the property, alleging that the property had been abandoned by the administratrix and further alleging that Missoula county on June 12, 1925, acquired 2/16ths interest of the Savage estate in the property by tax deed; that Maloney acquired this interest by purchase from the county on April 28, 1926, by quitclaim deed; that Maloney had acquired title

by adverse possession; that the administratrix was guilty of laches; that the estate was estopped from now claiming any interest in the property, and pleaded statutes of limitations.

The learned trial judge in findings and conclusions and judgment held in part as follows:

(1) That the Katherine Cummings estate and heirs are the owners of a 2/16ths interest in said property; that there had been no transfer and alienation of such interest and that no tax title or other proceedings had in any way affected the title of said estate or heirs in said property;

(2) That Katherine Cummings died in January, 1913, leaving a will which was probated in that court and by such will John L. Maloney (the appellant) and his brother John Joseph Maloney were devised all of Katherine Cummings' interest and estate in the Housum Placer; that since January, 1913, John L. Maloney (the appellant) became co-owner and co-tenant with the other parties in said action in such placer;

(3) That the Sophia Savage estate and heirs are the owners of a 2/16ths interest in said property; that the estate's title was not affected by any tax or other proceedings or transfers;

(4) That the royalties on deposit in the bank be paid to the various owners as established by the court proportionately to their interests;

(5) That John L. Maloney and his wife have no title, claim, estate nor interest in the Housum Placer by adverse rights as against any of the owners as found and named in the judgment.

John L. Maloney and wife have appealed to this court from that portion of the judgment holding that the Cummings estate is the owner of a 2/16ths interest in the property and royalty and that the Savage estate is the owner of a 2/16ths interest in the property and royalty and that the Savage estate is the owner of a 2/16ths interest in the property and royalties, and holding that Maloney and wife are not the owners of the above mentioned 4/16ths interest in the property and royalty.

Therefore the issues to be determined on appeal are between

John L. Maloney and wife as appellants and the Cummings estate and the Savage estate as respondents.

Appellants contend that the Cummings and Savage estates have abandoned all claims to the property, were estopped to claim any right therein, and were barred by laches in asserting any claim in the property or royalties.

Katherine Cummings died in 1913 and at the time of her death was the owner in fee simple of a 2/16ths interest in the Housum Placer. Probate of her estate was commenced in 1913 and is still in the process of probate in Missoula county.

Sophia Savage died in 1905 and at the time of her death was the owner in fee simple of a 2/16ths interest in the Housum Placer. Probate of her estate was commenced in 1916 and is still in the process of probate in Missoula county.

Little attention or interest, if any, was evidenced by the executor of the Cummings estate or the administratrix of the Savage estate in the Housum Placer until the present action was commenced. No taxes were paid by either estate on their respective interests in the property.

Maloney paid the taxes on a 4/16ths interest in the property since 1926, the date of his quitclaim deed from the county, and was partially responsible in securing parties to mine the property. However, it must be remembered that Maloney had a 1/16th interest in the property under the Katherine Cummings will, of which facts he had full knowledge.

The question arises: Can an estate under these circumstances be held to have abandoned a fee simple interest in real property and be barred by laches and estopped from asserting any claim to the property?

The question must be answered in the negative.

The court has repeatedly held that real property of a deceased person vests in his devisees or heirs immediately on his death, (Lamont v. Vinger, 61 Mont. 530, 202 Pac. 769; Montgomery v. First Nat. Bank of Dillon, 114 Mont. 395, 136 Pac. (2d) 760.) and under our probate law, an executor or admin-

istrator has no authority to voluntarily abandon property of the heirs or devisees.

1 Am. Jur. 2, sec. 2, gives the following definition of abandonment: ''As applied to property generally, it means the voluntary relinquishment of the possession of the property by the *owner* with the intention of terminating his ownership, but without vesting it in any other person.'' (Emphasis ours.)

''Failure to pay taxes does not of itself constitute abandonment of title or of property.'' (1 Am. Jur. 12, Abandonment, sec. 16.)

''An estate cannot be prejudiced or estopped by the mere silence of the administrator, or by his omission to assert title or to do an act in relation to its interest.'' Lewis v. Lusk, 35 Miss. 696, 697, 72 Am. Dec. 153.

''The administrator could not affect the title of the heirs to their real estate, descended to them from the intestate, except by a sale authorized and licensed by an order of the court. They hold their title in their own right, and only subject to the payment of the debts of their ancestor, in the mode prescribed by the law, and not subject to any other control of the administrator.'' Wallbridge v. Day, 31 Ill. 379, 383, 83 Am. Dec. 227.

''The administratrix has no power to bind the heirs by consenting to a proceeding under the provisions of the Political Code for laying out a public highway, by which they are divested of their estate in lands without their consent.'' Rush v. McDermott, 50 Cal. 471, 473.

''Undoubtedly the administratrix as such could not have abandoned and forfeited any right of the estate in the location and surveys without express authority of the probate court to do so.'' Pate v. McLain, Tex. Civ. App., 136 S. W. 538, 540.

''* * * an executor or administrator cannot * * * bind the heir by admissions relative to the land or the title thereto; * * *.'' 24 C. J. 131; 33 C. J. S., Executors and Administrators, sec. 252, p. 1262.

''* * * Unauthorized acts of the representative cannot bind

the estate or give rise to an estoppel against it; * * *." 33 C. J. S., Executors and Administrators, sec. 150, p. 1111.

The appellants further contend that the trial court erred in holding that all the proceedings leading to and the tax deeds to Missoula county purporting to convey the Cummings estate and Savage estate's 4/16ths interest in the Housum Placer and the quitclaim deed of Missoula county to Maloney purporting to convey such 4/16ths interest, were each and all made and executed without authority of law, in violation of the rights of the owners, and were void and of no effect.

An examination of the title and tax deed proceedings dealing with the Katherine Cummings estate's 2/16ths interest in the Housum Placer shows in part as follows: Patent was issued to Benjamin F. Housum, Jeremiah Savage and others. Thereafter in 1898 Housum deeded a 1/8th interest to Michael Cummings. Michael Cummings died and his estate was probated and decree of distribution made June 15, 1912, distributing this 1/8th interest to Katherine Cummings. On the same day a certified copy of the decree was filed of record with the clerk of Missoula county. The Michael Cummings estate was closed June 15, 1912. By court decree dated December 28, 1912, and recorded March 3, 1913, the Michael Cummings estate was decreed to be the owner of a 2/16ths interest in the property. Katherine Cummings died in January, 1913, and on March 1, 1913, her will was admitted to probate in the district court of Missoula county. Her will devised this 2/16ths interest to John L. Maloney (the appellant) and Joseph Maloney.

On May 9, 1925, the following notice of application for tax deed was filed in the county clerk's office:

"To estate of M. Cummings, % E. C. Mulroney, Missoula, Montana.

"Notice Is Hereby Given

"That at the annual sale of delinquent taxes due the State of Montana, and the County of Missoula, held by the County Treasurer of the County of Missoula on the 18th day of Jan. 1922, the following described property to-wit: "An undivided

2/16 interest in Housom Placer Mining Claim T. 17 N. R. 25 was sold for the sum of one and 74/100 . . . Dollars, delinquent taxes for the year 1921, that the County of Missoula was the purchaser at such sale; that there is now due from said sale the sum of $2.40; that the taxes for the year 1922, with penalty and interest, amount to $1.47; that the taxes for the year 1923, with penalty and interest amount to 87 cents; that the taxes for the year 1924, with penalty and interest amount to 73 cents; that the total amount from said sale, including the subsequent taxes, as stated, now due and required to redeem the said property is the sum of Five and 47/100 . . . Dollars; and that a further sum of Three Dollars will be added to the last above stated amount from and after the date of the filing with the Treasurer of Missoula County of the affidavit of service of this notice, and

''Whereas, the time of redemption having elapsed since the date of said sale, and the said property has not been redeemed therefrom as provided by law.

''Notice is then further given that the County of Missoula, State of Montana, in accordance with an order duly made by the Board of County Commissioners of said County, unless the property described shall in the meantime be redeemed, will on the 30th day of May, 1925, apply to the Treasurer of Missoula County for a tax deed of said above described property.

Dated this 28th day of March, 1925, at Missoula, Montana.

W. J. Babington

''County Clerk, in and for County of Missoula, State of Montana.''

Accompanying the notice was the following affidavit of service of notice.

''State of Montana }
County of Missoula } ss.

''P. J. Hale being duly sworn, deposes and says that the foregoing is a full, true and correct copy of a notice served on the 23rd day of April, 1925, on the owner, or owners and mortgagee, if any, of the property by posting it in a conspicu-

ous place on the property, which is vacant and unoccupied, or on the owner in person, also by mailing a copy of this notice by registered mail, postage prepaid, to the above address, and by publishing notice of application for tax deed for two weeks in the official paper of the County. All of the above in accordance with Chapter 87 of the Session laws of 1921.

P. J. Hale,

"Subscribed and sworn to before me this 30th day of April, 1925.

W. J. Babington

Clerk and Recorder,

Missoula County, Montana"

No notice was ever served on the Katherine Cummings estate and the mailing of the notice to the estate of M. Cummings, % E. C. Mulroney, Missoula, Montana, was of no effect as that estate had been closed and distributed some 13 years before and no such estate existed.

An examination of the title and tax deed proceedings dealing with the Sophia Savage estate's 2/16th interest in the Housum Placer shows in part as follows: Patent was issued to Jeremiah Savage and Benjamin F. Housum and others. Thereafter in 1898 Jeremiah Savage deeded a 1/16th interest to Sophia Savage of Thearce, Shoshone County, Idaho. Thereafter in 1900, George A. Wood, a part owner of the Housum Placer, deeded a 1/16th interest to Sophia Savage. By court decree dated December 28, 1912, recorded March 3, 1913, Sophia Savage was decreed to be the owner of a 2/16th interest in the property. Sophia Savage died in August, 1905, in Shoshone County, Idaho, and on October 6, 1916, letters of administration of her estate were issued to Azelie Savage in Missoula county.

On May 9, 1925, the following notice of application for tax deed was filed with the county clerk's office:

"To Sophia Savage, Stark, Mont.

"Notice is Hereby Given

"That at the annual sale of delinquent taxes due the State

of Montana, and the County of Missoula, held by the County Treasurer of the County of Missoula on the 18th day of January, 1922, the following described property to-wit:

"An undivided 2/16 int. in Housum Placer Mining Claim was sold for the sum of one and 22/100 . . . Dollars, delinquent taxes for the year 1921, that the County of Missoula was the purchaser at such sale; that there is now due from said sale the sum $2.40; that the taxes for the year 1922, with penalty and interest, amount to $1.55; that the taxes for the year 1923, with penalty and interest amount to $1.60; that the taxes for the year 1924, with penalty and interest amount to $1.75; that the total amount from said sale, including the subsequent taxes, as stated, now due and required to redeem the said property is the sum of Seven and no/100 . . . Dollars, and that a further sum of Three Dollars will be added to the last above stated amount from and after the date of the filing with the Treasurer of Missoula County of the affidavit of service of this notice, and

"Whereas, the time of redemption having elapsed since the date of said sale, and the said property has not been redeemed therefrom as provided by law.

"Notice is then further given that the County of Missoula, State of Montana, in accordance with an order duly made by the Board of County Commissioners of said County, unless the property described shall in the meantime be redeemed, will on the 30th day of May, 1925, apply to the Treasurer of Missoula County for a tax deed of said above described property.

"Dated this 28th day of March, 1925, at Missoula, Montana

W. J. Babington

"County Clerk in and for the County of Missoula, State of Montana."

The same form of affidavit of service as hereinbefore set forth accompanied this notice.

No notice was ever served on the Sophia Savage estate and the mailing of the notice to Sophia Savage was of no effect as the records disclose her address as Thearce, Shoshone County,

Idaho, and the notice was mailed to her at Stark, Montana, twenty years after her death in Shoshone county, Idaho.

The affidavits of service were defective in that they were worded with uncertainties and alternatives and failed to state clearly and specifically the acts which were done and the persons to whom notice was given or how and when served. For example, the affidavits state the notice was served "on the owner, *or* owners and mortgagee, *if any,* of the property by posting it in a conspicuous place on the property, which is vacant and unoccupied, *or* on the owner in person, * * *" (Emphasis ours.)

This court in the case of Sanborn v. Lewis and Clark County, 113 Mont. 1, 17, 120 Pac. (2d) 567, 574, said: "In applying for a tax deed under the ordinary statutory method, the matter of importance is the giving of notice of the application. The purpose of the notice is to warn the land owner, and others interested, of the impending issue of the tax deed and the termination of the right of redemption coincident therewith. The giving of the notice is jurisdictional and unless the requirement of the law in respect to such notice is complied with and proven by affidavit filed with the county treasurer, the tax deed should not issue."

Again, in the case of Jensen L. S. Co. v. Custer County, 113 Mont. 285, 296, 124 Pac. (2d) 1013, 1018, 140 A. L. R. 658, this court said as follows: "Section 2212 provides now, and ever since its enactment in 1891 has provided: 'No deed of the property sold at a delinquent tax sale must be issued by the county treasurer * * * to the purchaser of the property, until after such purchaser shall have filed with the treasurer * * * an affidavit showing that the notice hereinbefore required to be given has been given as herein required.' In other words, the treasurer has no jurisdiction to issue a tax deed until there has been filed with him 'an affidavit showing that the notice hereinbefore required to be given has been given *as herein required,* etc. Cullen v. Western Mortgage & Warranty Title Co., 47 Mont. 513, 134 Pac. 302; Gallash v. Willis, 90 Mont. 148,

300 Pac. 569; Sanborn v. Lewis and Clark County, 113 Mont.—[1], 120 Pac. (2d) 567.''

The following notice of application for tax deed was published and filed:

"Notice of Application for Tax Deed

"Pursuant to a resolution passed March 20th, 1925, notice is hereby given that the undersigned will on the 30th day of May, 1925, apply to the County Treasurer of Missoula County, Montana, for tax deeds, to the following described property, to-wit: (Besides other property)

| Mining Claims | Sec. | Twp. | Rnge. |
|---|---|---|---|
| (Besides other claims) | | | |
| Housom Placer Mine undivided 4-16 int. | 7.95 | | |
| Housom Placer Mine undivided 2-16 int. | 7.00 | | |
| Housom Placer Mine undivided 1-16 int. | 2.78 | | |
| Housom Placer Mine undivided 1-16 int. | 5.45 | | |

Dated March 28th, 1925

Board of County Commissioners,
Missoula County, Montana
By R. R. Wilbur, Chairman
Applicant.

Attest:

W. J. Babington
County Clerk; Missoula County, Montana"

The notice so published and the notices mailed were defective in that there was no mention of the names of the owners of the interests in the property for which the county was applying for tax deed. In other words, the notices failed to show or give notice that it was the 2/16ths interest of the Katherine Cummings estate and the 2/16ths interest of the Sophia Savage estate that were involved in the proceedings. We also point out that in the notice addressed to the M. Cummings estate the property is described as being in ''T. 17 N, R 25'' whereas the correct range is 24. In the notice addressed to Sophia Savage the property is not described by any township or range. The published notice mentioned several undi-

vided interests but there is mention of only one 2/16ths interest though the county was applying for tax deed on two 2/16ths interests.

Consequently, it was impossible to determine whose interest in the property was being applied for in the tax deed proceedings.

Each of the two tax deeds taken by the county likewise described the property as "an undivided 2/16 interest in the Housom Placer Mining Claim" and the only description contained in the quit claim deed from the county to Maloney was as follows: "An undivided 4-16 interest in the Housom Placer Mining Claim."

These tax deeds were likewise defective in that they failed to specify that it was the 2/16ths interest of the Katherine Cummings estate and the 2/16ths interest of the Sophia Savage estate that were acquired by tax deed proceedings and sold to Maloney.

"The *description* of the land, both assessed and sold, was so uncertain and ambiguous as to be incapable of identification. * * *

"The land here sued for, as described in the *complaint,* is designated as 'lots number 4 and 5, in Square number 39, of what has heretofore been known as the Fisher tract.' The land described in the *assessment* and the tax-deed is as follows: '2/3 *of Square 39 in Fisher tract.*' The ambiguity patent on the face of this description is obvious. It may mean (1) *an undivided two-thirds interest,* held by the owner, Fisher, by way of tenancy in common; or (2) it may mean an *entirety of two-thirds in area* of the whole square. Which of the two is intended, it is impossible to say; and the ambiguity being patent, can not be corrected by the introduction of extrinsic or parol evidence. Similar descriptions have been adjudged by other courts to be void for uncertainty. Bidwell v. Coleman, 11 Minn. 78, 91; Adams v. Larrabee, 46 Me. 516, 519; Burroughs on Tax. 203-205; Hilliard on Tax. 517, sec. 12." Dane v. Glennon, 72 Ala. 160, 162.

"In tax proceedings 'the description must be certain of itself, and not such as to require evidence aliunde to render it certain. * * * Certainty in the description is required to apprise the owner that his property is advertised for sale, and to enable him to prevent the sale by the payment of the taxes thereon, and to impart information to bidders of the actual extent and location of the premises to be sold. All subsequent proceedings depend upon this certainty. An inaccurate or an uncertain description defeats every step subsequently taken, and, as we have already said, the uncertainty cannot be cured by evidence aliunde.' Keane v. Cannovan, 21 Cal. [291], 302, 82 Am. Dec. 738. See, also, Roberts v. Chan Tin Pen, 23 Cal. [260], 267; Mountain Club v. Pinney, 67 Cal. App. [225], 251 227 Pac. 630; Miller v. Williams [135 Cal. 183, 67 Pac. 788] and Smith v. City of Los Angeles [158 Cal. 702, 112 Pac. 307], supra." Stewart v. Atkinson, 96 Cal. App. 50, 273 Pac. 606, 608.

"There is no dissent from the rule that a description which merely designates the land conveyed as a portion of a larger tract, without greater certainty as to the identity of the particular part conveyed, is fatally defective. * * * It follows, therefore, that the tax proceedings and tax deed were utterly void and constitute no defense to this action." Mary M. Miller & Sons v. Daniels, 47 Wash. 411, 414, 92 Pac. 268.

"The defendants justified their entry by virtue of tax deeds purporting to convey 'nine and thirty-two hundredths (9.32) acres of the Happy Valley Placer, survey lot No. 12354, Grand Island mining district, situated in the county of Boulder and state of Colorado.' Since the description in each of these deeds is of an unidentified part of a larger tract, they are void * * *." Smith v. Highland Mary Mining, M. & P. Co., 82 Colo. 288, 259 Pac. 1025, 1026.

In the recent case of Frates v. Whitson, 195 Okl. 129, 155 Pac. (2d) 536, 537, the Oklahoma court held as follows:

"In the resale deed which the county received at the close of the resale and in the proceedings to secure a deed from the county commissioners the land was described as:

" '21.61 Acres S ½ NE ¼ and NE¼ SE¼ and N½ NW¼ SE¼ NW¼ Sec. 33, Twp. 14, Rng. 11, in the County of Okmulgee, State of Oklahoma.'

"The difficulty with this description is that it fails to say whose land was being sold. 125 acres were described by government survey. 21.61 acres were offered for sale and sold. Which and whose 21.61 acres was it? The particular 21.61 acres of land was not sufficiently described.

"Since the county did not get a good deed it could not execute one. Watts v. Meriwether, 184 Okl. 32, 84 Pac. (2d) 643; Chamberlain v. Davis, 191 Okl. 457, 130 Pac. (2d) 848; Schuman v. Moses [193 Okl. 634], 146 Pac. (2d) 290 * * * .The commissioners' deed herein presented was defective. The county had not acquired title and could not transfer the same."

This court in the case of Horsky v. McKennan, 53 Mont. 50, 60, 162 Pac. 376, 379, said: "A description in a tax deed which is so indefinite that the land intended to be conveyed cannot be identified is ineffective. 37 Cyc. 1445 et seq.; Black on Tax Titles, secs. 405-407; Blackwell, Tax Titles, secs. 758-769; McRoberts v. McArthur, 62 Minn. 310, 64 N. W. 903; Moran v. Thomas, 19 S. D. 469, 104 N. W. 212; Keane v. Cannovan, 21 Cal. [291], 301 et seq., 82 Am. Dec. 738; Dickinson v. Arkansas City Imp. Co., 77 Ark. 570, 92 S. W. 21, 113 Am. St. Rep. 170."

We therefore agree with the trial court that the tax deed proceedings, the tax deeds to Missoula county, and the quit-claim deed of the county to Maloney are void and of no effect.

Appellants claim that the court erred in considering any evidence of defects in the tax deed proceedings and deeds.

The trial court was not in error and we re-affirm what this court said in the case of Sanborn v. Lewis and Clark County, 113 Mont. 1, 16, 120 Pac. (2d) 567, 574: "We hold that the validity of a tax deed which has been issued by the county treasurer by application under the ordinary statutory method and without court action may be questioned and determined in an action to quiet title under section 9479, and whether its invalidity appears on the face of the deed or must

be shown by reference to the tax title proceedings leading up to its issue; and the question may be raised by the plaintiff under the short form of complaint, alleging in general terms title in the plaintiff and unfounded claim of title by the defendant; and that the plaintiff, under such a complaint, is entitled to introduce evidence of irregularities, defects and omissions in the tax title proceedings affecting the validity of the deed, as well as the deed itself, and all of which should be considered by the court in determining the validity of the deed.''

''The above quoted statute [sec. 2209, Rev. Codes] is explanatory of the reason why this notice must be given. Under the facts in this record it clearly appears that there was not the necessary service of notice to ground jurisdiction for the issuance of the tax deed. In Small v. Hull, 96 Mont. 525, 32 Pac. (2d) 4, 5, this court said: 'Chapter 85 [Laws of 1927], though it attempts to make the deed conclusive evidence of all proceedings from the assessment by the assessor up to the execution of the deed (except as against fraud), does not prevent the true owner from showing a want of notice in the tax proceedings. Marx v. Hanthorn, 148 U. S. 172, 13 S. Ct. 508, 37 L. Ed. 410. It was proper, therefore, to receive evidence showing that no notice of application for the deed was in fact served upon these defendants, and particularly when that fact appears upon the face of the affidavit filed as a basis for the issuance of the deed.'' Kerr v. Small, 112 Mont. 490, 117 Pac. (2d) 271, 272.

The appellants further contend that the defects in the tax deed proceedings and in the Maloney title have been validated by curative acts.

We think it sufficent to say that a curative statute cannot breathe life and validity into void tax deed proceedings or void tax deeds. To hold otherwise would be to hold that a man's property may be taken from him without due process of law.

Noncompliance with statute as to notice of sale held not cured by statute making deed conclusive evidence. Gramson v. Geniella, 209 Cal. 610, 289 Pac. 817.

"The reason that the deed [tax deed] is void is because the description in it cannot be identified. No curative statute could make such a deed good." Smith v. Highland Mary Mining, M. & P. Co., supra.

"The plaintiff contends that the tax deed under which the defendant claims is void because of irregularities in the proceedings, to-wit: Failure to serve notice on the occupant and owner, of the application for a tax deed, failure to file affidavit of proof of service, and failure properly to describe the premises. * * *.

"The next question is as to the effect of the validating Acts of 1939 (Chapters 94 and 105). The general rule in the application of validating statutes is that a curative statute may cure any requirement or step which the legislature might have made immaterial by a prior law. Martin v. Glacier County, 102 Mont. 213, 56 Pac. (2d) 742. However, in the case at bar the attack is on the fact of notice which the legislature may not do away with. If such were done it would be violative of the due process clause of the Montana Constitution, Article III, section 27. See Small v. Hull, supra [96 Mont. 525, 32 Pac. (2d) 4, 5.] and the cases therein cited." Kerr v. Small, supra.

Appellants further contend that the court erred in failing to find that any cause of action that the Cummings estate or the Savage estate may have had in the land was barred by section 2214, Revised Codes of 1921, which reads as follows: "Such deed, duly acknowledged or proved, is (except as against actual fraud) conclusive evidence of all other proceedings, from the assessment by the assessor, inclusive, up to the execution of the deed, and no action can be maintained to set aside or annul a tax deed upon any ground whatever, unless the action is commenced within two years from and after the date of issuance of such tax deed; provided, that any existing right of action to set aside or annul any tax deed, heretofore issued, shall be barred unless instituted within two years from and after the passage and approval of this act."

In view of the fact that the tax deed proceedings were void

for jurisdictional defects, the above statute has no application in this case.

"If certain vital requirements are lacking in a proceeding, their necessity cannot be removed, and a fundamentally defective title cannot be made a good title by simply drafting a good and proper tax deed." Lind v. Stubblefield, 138 Okl. 280, 282 Pac. 365, 366.

With reference to section 2214, this court in the case of Small v. Hull, 96 Mont. 525, 536, 32 Pac. (2d) 4, 7, said as follows: "The statute, so far as it attempts to bar the owner's right to attack a deed issued without the notice of application therefor amounts to a taking of his property without due process of law. Under such a situation he has no notice as to when the statute begins to run against him. In such a case the statute is no more a bar than in a case such as that involved in the Horsky Case where the deed was void on its face. Where the original owner has had no notice of application for the deed, the statute must make some provision whereby he is given notice, actual or constructive, that the statute is running against him, before the deed can be made conclusive against him within a specified time after its issuance."

Section 2209, Revised Codes of 1935, after stating the manner in which notice must be given in specifying the contents of the notice provides as follows: "* * * The owner of the property * * * has the right of redemption indefinitely until such notice has been given * * *."

Appellant further contends that regardless of the sufficiency of the tax deed, Maloney acquired title to the interest of the Cummings estate and the Savage estate in the property by adverse possession and that the claims of both estates are barred by the statutes of limitations, section 9015 and 9019, Revised Codes.

Though Maloney claimed title under the tax deed and had paid the taxes on the property since he secured the quitclaim deed from the county, he has failed to satisfy the require-

ments of occupancy and possession necessary to prove adverse possession.

On the question of possession Maloney on direct examination testified as follows:

"Q. After you had received this deed purporting to convey this interest to you, did you take possession of the claim? A. I did. I visited the claim, and did some prospecting.

"Q. Do you know what year? A. I think it was in 1927 or 1928, and I think again in 1930. Later on again, I think in 1937.

"Q. Describe to the Court the nature of this land, whether it is farm land. A. There is none of it farm land. It is well covered with brush, and lies in the valley. Mountains along each side of it. It is only fit for mining, or something of that kind."

On cross-examination Maloney testified as follows:

"Q. You have stated that there was no one living or working on the property at the time you took this tax deed? A. As far as I know, there wasn't.

"Q. Did you live on the property after that? A. No.

"Q. You did nothing, other than these trips? A. Prospecting and looking over the ground. * * *

"Q. You also have stated that you did prospecting work on this placer? A. You would hardly call it prospecting. Amateurish.

"Q. Did you take time off from any of your work to go prospecting on this placer claim? A. No, just week-ends and vacation days.

"Q. Just a picnic, or an outing? A. That's right."

Maloney claims credit for the mining lease which was entered into covering the property by reason of which the property was developed and the royalties in question paid. However, the evidence discloses that other parties beside himself were interested in having the property developed and on direct examination he testified as follows:

"Q. You were the one that supplied that information? A. Supplied all the information.

"Q. After that, the owners all cooperated? A. As far as I know, they did."

Bearing in mind that the court made the following findings in this case, "That Katherine Cummings died in January, 1913 leaving a will which was probated in that court and by such will John L. Maloney (the appellant) and his brother John Joseph Maloney were devised all of Katherine Cummings' interest and estate in the Housum Placer; that since January 1913 John L. Maloney (the appellant) became co-owner and co-tenant with the other parties in said action in such placer; * * *" We believe that what this court said in the case of Le Vasseur v. Roullman, 93 Mont. 552, 557, 20 Pac. (2d) 250, 252, is applicable to the present case:

" 'All acts done by a cotenant and relating to or affecting the common property, are presumed to have been done by him for the common benefit of himself and the others. The relation between him and the other owners is always supposed to be amicable rather than hostile; and his acts are therefore regarded as being in subordination to the title of all the tenants, for by so regarding them they may be made to promote the interests of all. Therefore, as a general propostion, the entry on one cotenant enures to the benefit of all.' Freeman on Cotenancy, (2d Ed.) sec. 166. 'And, supported by the same reasons, and prevailing to the same extent, is the rule that the continuing possession of a cotenant, whether the entry was made by himself or in connection with his companions, is the possession of all the cotenants.' Id., sec. 167."

"Putting a tax deed for the whole tract on record is no ouster of a cotenant unless he knew of the adverse claim, and this is true even though the claimant enters under such a deed and exercises certain acts of ownership." (1 Am. Jur., 826, sec. 55.)

"Under well-known principles of law, payment of the taxes by any one of tenants in common during the time of the

cotenancy is considered payment of the taxes by all cotenants." (62 C. J. 478, sec. 119.)

There being no adverse possession, no statute of limitations was ever set in motion and the trial court was not in error in so holding.

We have considered all of appellant's specifications of error, and there being no reversible error, the judgment is affirmed.

Associate Justices Morris, Adair, and Cheadle concur.

Mr. Justice Angstman (dissenting).

I do not agree with my associates in holding that the notice of application for tax deed was insufficient for want of further description of the property.

The purpose of requiring notice of tax foreclosure proceedings is "(1) to warn the owner that his property is to be sold, so that he can prevent the sale by paying his taxes, and (2) to advise prospective purchasers, so that they can investigate the property and determine whether they want to bid. * * * The notice as a whole must be looked to in order to determine the sufficiency of the description; it is sufficient if it is such as will enable the owner and prospective purchasers to identify and locate the land to be sold with substantial certainty, and if it is not calculated to mislead. * * * Ordinarily, if the description is sufficient to notify the owner, it is sufficient to notify the public." (51 Am. Jur. "Taxation," sec. 1035.)

Here there is no proof that anyone was mislead by the description. An owner being served with this notice would know what was meant by the Housum Placer absent any showing that there was more than one Housum Placer in Missoula county. The owner knows better than anyone else whether he has paid his taxes on his interest in the Housum Placer and, if not, that his interest was sold for delinquent taxes and that it was his particular interest in the Housum Placer that was about to pass by tax title. It was of no moment to him that other interests in the same property were also passing. The fact that one 2/16th interest required a slightly different amount to be

paid on redemption than the other 2/16th interest is of no moment under section 2214.2.

An uncertain description of property is sufficient if it can be made certain by reasonable investigation. Medaris v. Tracey, 170 Okl. 113, 39 Pac. (2d) 30. And see note in 137 A. L. R. 191.

I think the majority opinion, so far as it holds that the notice of application for the tax deed did not sufficiently describe the property, substitutes form for substance. This case is not comparable to those relied upon in the majority opinion where a stated fraction of a larger tract of land or a certain number of acres in a larger tract was involved without a particular description of which acreage was involved. Here a specified undivided interest in the entire claim was involved and I do not believe it is neecssary that the notice specify that it is the particular undivided interest which the owner acquired from Sam Brown where, as here, it involved the entire interest that the particular taxpayer had in the entire property.

The significance of this point rests in the fact that as to the Savage interests at least, if the description was sufficent, there was ample notice given under section 2209, Revised Codes. That statute when dealing with unoccupied property or a mining claim, as here, requires notice upon the owner only if he be known and then by registered mail if his address be known and, if not, by publication. Sutter v. Scudder, 110 Mont. 390, 103 Pac. (2d) 303. Upon the death of Sophia Savage the owner of the property could not be known until the estate was probated, much less the address of the owner. That being so, then under section 2209 it was sufficient that notice be published as was done here. The affidavit of service condemned in the majority opinion was good at least to the extent of proving that the land was vacant and unoccupied. The record shows an affidavit of the printer filed in the office of the county clerk showing publication of the notice referred to in the majority opinion.

As to the Cummings estate, certainly John L. Maloney as one of the devisees, and, hence as one of the owners thereof.

could waive notice of application for tax deed so far as it affected his interest.

I think, too the judgment cannot stand for another reason. The owner of property not only has rights but with them go corresponding obligations. One of them is that he will pay taxes annually, not semi-centenially. This duty also devolves upon the executor and administrator. Sec. 2173, Rev. Codes; In re Kelley's Estate, 91 Mont. 98, 5 Pac. (2d) 559.

Katherine Cummings died in January, 1913, and probate of her estate was commenced in that year and is still pending. Sophia Savage died in 1905. Probate of her estate was commenced in 1916 and is still pending. This action was commenced in July, 1942, and it was not until the filing of the answer by Azelie A. Savage, the administratrix of the Sophia Savage estate on January 30, 1943, that any claim was asserted by the Savage estate to its 2/16ths interest and not until the filing of the answer by M. D. Flynn, executor of the Katherine Cummings estate on February 13, 1945, that any claim was made to the 2/16ths interest in the Cummings estate. Missoula county acquired a tax deed to the property on June 12, 1925; Maloney purchased the property from Missoula county in April, 1926; the deeds were placed on record in 1927 and Maloney has paid the taxes on the property ever since; Maloney did not himself apply for and receive the tax deed. He purchased from the county. I think the claims asserted by the executor and administratrix are barred by sections 9015, 9016 and 9019, Revised Codes.

True, the property was not surrounded by a fence and Maloney did not occupy it to any great extent. The property being mining property there was no object in fencing it. Mining property is frequently not easily accessible and is generally unoccupied unless it is actually worked. Actual occupancy or fencing of the property would not have brought home to the executor and administratrix the adverse claim nearly so effectively as the recording of the deed and the paying of the taxes.

I think Maloney "hoisted his flag" over this property by placing the tax deed of record and paying taxes thereon for some 18 years. I do not see how it can be said that he is presumed to have been acting all these years for the benefit of himself and others called co-tenants when he announced to the world by filing of his deed that he was acting for himself only. Reasonable inquiry by the administratrix and executor or by the heirs would have dispelled any presumption that he was acting for anyone other than himself. I think that the statutory rule that, "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact has constructive notice of the fact itself, in all cases in which, by prosecuting such inquiry, he might have learned such facts", (Sec. 8781, Rev. Codes) has application here. The law requires that all owners of property take notice that taxes are due annually and that if not paid the property will be sold. As to taxes deliquent in November, the property will be noticed for sale in December following and as to that delinquent in May, the property will be noticed for sale in June following. (Sec. 2182, Rev. Codes.)

A prudent person bent upon saving his property from passing by tax title, at least every decade or so, when he does not pay the taxes, should make inquiry concerning it from the public officials or examine the records regarding it. I think section 8781 charges the executor and adminstratrix with notice of the filing of the tax deed more than ten years before the assertion of any claim by them here.

Had the executor and administratrix or the heirs whom they represent examined the records, the optimistic surmise that perhaps some charitable co-tenant was paying the taxes for their benefit would have been completely dissipated by the cold, hard facts there appearing that the taxes were being paid and other acts of ownership were being exercised by one who held adversely with a deed on record showing that he held the property of the Cummings and Savage estates by virtue of a deed from Missoula county. Chargeable with knowledge of what

418

the record disclosed for these many years, the duty devolved upon them to act within ten years or be forever barred.

I concede, of course, that ordinarily the possession of one co-tenant is possession by all and that mere possession of a co-tenant is not sufficient to constitute adverse possession, but as stated above, Maloney had his deed from the county of record and it is my view that the executor and administratrix and the heirs of the Cummings and Savage estates are charge-able with knowledge thereof beacuse of section 8781 so as to come within the rule stated in 1 Am. Jur. 826, relied upon in the majority opinion.

It should be noted that in this case each separate co-tenant was separately assessed and taxed for his separate interest in the property. Had the mine been assessed as a unit, then some of the elementary principles of law relating to the rights and obligations of co-tenants announced in the majority opinion would have application. But here, since each co-tenant was assessed separately on his separate interest in the property, there is no room for application of most of the principles af-fecting co-tenancies referred to in the majority opinion. The court in Cocks v. Simmons, 55 Ark. 104, 17 S. W. 594, 29 Am. St. Rep. 28, which is one of the cases cited in support of the statement from 1 Am. Jur. 826, relied upon in the majority opin-ion, made particular reference to this distinguishing feature by saying, ''As the interest of the co-tenants were assessed, taxed, and sold together, the sale was occasioned alike by the default of each party. Whether either might have paid his pro rata of the tax, and, upon the sale of the other's undivided interest, purchased it, is a question not presented nor considered.''

Here the assessment and tax being separate as to each in-terest of each co-tenant, the cases supporting the general rules as to co-tenancies have no application. Under facts such as we have each co-tenant pays his tax and his only, and default in the payment by one cotenant subjects only his interest to tax sale proceedings.

I do not believe the executor and administratrix may sit by

for these many years, permit the porperty to be sold for delinquent taxes, allow another to deal with the property as his own and having a tax deed on record for more than 18 years during which time he was paying the taxes and doing everything that an owner would and could do in attempting to have the property developed as a mining property, without being barred by limitations under sections 9016, 9017 and 9019, and without being guilty of laches.

Rehearing denied January 3, 1947.