230 P.2d 998

**CHAPIN et ux. v. STEWART et al.**

No. 7701.

Supreme Court of Idaho.

May 2, 1951.

Cleve Groome, Caldwell, for respondents.

V. K. Jeppesen, Nampa, for appellants.

308

TAYLOR, Justice.

William P. Kennedy, a bachelor, died intestate on or about January 31, 1916, leaving, as his only heirs at law, one sister and five brothers. February 9, 1916, one of the heirs, Daniel W. Kennedy, filed a petition for administration of the estate in the probate court of Canyon County. Letters were issued to him February 28, 1916. On or about March 25, 1916, another of the heirs, John R. Kennedy, a resident of Glendale, California, died survived by his widow and four children. In his will John left three-fourths of his estate to his widow and one-fourth to the four children equally. On the 2nd day of May, 1917, the final account and petition for distribution of the estate of William P. Kennedy was heard, settled and allowed, and decree of distribution was made and entered. In this decree it is adjudged that the same six persons, the sister and five brothers, named in the petition for letters, are left surviving him as his heirs at law "and all of whom are at the present time living". The entire estate is distributed one-sixth to each, including one-sixth to John, who as noted had died the year before. On February 7, 1918, the probate court decreed the estate fully administered and discharged the administrator. Daniel W. Kennedy, the administrator, testified that by correspondence with the other heirs he arranged for a sale of the real property of the estate to a Mr. Clark. Apparently this was after the decree of distribution was entered. He says the price was $17,000.00, that Clark made a down payment of $2,000.00 and a deed to him was placed in escrow; that Clark forfeited the contract; after talking it over with the others and at their request he, Daniel, "took it over", paid the other heirs the $15,000.00 balance due on the price and received from them a deed. The lands involved are farm lands and it appears that certain livestock was included in the sale to Clark, which did not go to Daniel when he took over.

The deed from the coheirs to Daniel W. Kennedy is dated April 17, 1918, and was recorded October 24, 1919. The late recording is perhaps due in part at least to the fact that the makers lived in scattered localities; three of them at different points in Canada, one in Portland, Oregon, and the other in California, and the last acknowledgment is dated in February, 1919. The makers are the sister, the three brothers, "and Martha Kennedy McNary, widow and devisee of John R. Kennedy, late of Glendale, being, together with the grantee hereinafter named, all of the heirs of William P. Kennedy deceased". In other respects the deed is in the usual form and purports to convey to the grantee the entire title and estate in the property described, and contains a covenant of warranty. In addition to her individual signature as a maker, John's widow also signs and acknowledges the deed as "Martha Kennedy McNary, Executrix of the last will and testament of Joseph Kennedy, deceased."

(The name Joseph evidently is an error.) John Kennedy's will was probated in California, and in Ada County, Idaho, where he also held property. The share of the William Kennedy estate which descended to John was not listed as an asset of his estate, nor was any distribution made thereof in those proceedings. John's share of the proceeds of the sale to Daniel Kennedy was paid to his widow, Martha Kennedy.

About two months after the conveyance of the property to Daniel, he took possession of the farm involved in this action. He rented it during the first two succeeding years and then he and his wife moved upon the land and thereafter continuously occupied it as their home, until they sold and conveyed it to the plaintiffs (respondents) herein on May 8, 1948. The sale to the Chapins also included property other than the farm in question. This action was brought by them to quiet their title to all of the property conveyed. The appellants, being three of the children of John R. and Martha Kennedy, were made defendants. They appeared and asserted title to a one-forty-eighth share each in that part of the property acquired by Daniel Kennedy from the estate of his brother, William.

Defendants do not allege mistake or fraud. Their defense is that at their father's death they became tenants in common with the heirs of William Kennedy; that Daniel, a cotenant, took possession as administrator and never made any claim or gave them any notice that he was holding adversely to them until the conveyance to plaintiffs in 1948; that they at all times have been residents of California and were unaware of any adverse claim by their uncle Daniel; that they placed their confidence and trust in him believing he would protect any interest they might have in the property of the estate.

The trial court found that plaintiffs and their predecessor in interest, Daniel W. Kennedy, had acquired title by adverse possession, and that appellants' claims thereto are now barred by the statute of limitations. The evidence establishes that from the time Daniel W. Kennedy and his wife took possession in 1918 to the time of their sale to the plaintiffs their possession was continuous, open, notorious, adverse, exclusive and under color of title; that they treated and regarded the property as being exclusively their own; that they made valuable improvements thereon, consisting of a tenant house, barn, chicken house, granary, sheds and two silos, and expended approximately $6000.00 leveling the land, or a total expenditure for improvements of between twenty and twenty-one thousand dollars; that they appropriated unto themselves all of the income and profits therefrom, and paid all taxes and assessments levied thereon.

There is no trust involved. The confidential relationship, which existed between Daniel W. Kennedy, as administrator,

and the heirs of the estate of William Kennedy, terminated when the estate was closed and he was discharged by the probate court. The transfer to Daniel, having occurred after his discharge, is not affected by any relationship of trust or confidence, except that which is inherent in the ordinary relationship of tenants in common. And this relationship is repudiated by adverse possession. Olympia M. & M. Co. v. Kerns, 24 Idaho 481, 503, 135 P. 255.

Generally speaking, a cotenant in possession is presumed to hold for all of the cotenants and not adversely. If he acquires an adverse title or interest from a stranger, he is presumed to have purchased it for the benefit of all, and for the protection of the common estate. In the absence of notice to the contrary, brought home to his cotenants, his continued possession will not be regarded as adverse by reason alone of the acquisition and recording of such outstanding title. Anno. 54 A.L.R. 874; Anno. 85 A.L.R. 1535; Miller v. Murphy, 119 Mont. 393, 175 P.2d 182.

Such assumption does not arise, however, where one tenant purchases the share or title of another tenant in common. Obviously he could not in such case be acting for the benefit of all by thus acquiring for himself a larger share of the common estate. So, where a tenant purchases what he regards as all of the shares of all other cotenants, and receives a deed, purporting to convey to him the complete title, and, being out of possession, moves into possession and occupies the property exclusively as his own, no presumption arises that his possession is not adverse as to other cotenants who did not join in the conveyance. Anno. 54 A.L.R. 905.

This court has recently held that the recording of a sheriff's deed, which purported to convey to one cotenant the share of the other, "was not, as a matter of law and independent of any other fact, constructive notice to defendant of the adverse character of plaintiff's possession." Terry v. Terry, 70 Idaho 161, 213 P.2d 906, 910. In that case, however, the interest purchased was the adverse interest of a judgment creditor. A voluntary transfer by one cotenant to another was not involved. Further, the money to purchase the sheriff's certificate of sale came from the share of the rentals belonging to the tenant whose interest was levied upon by the creditor. There was no change of possession following the purchase, and the purchaser continued to represent to her cotenant and the mortgagee of the property that she recognized her cotenant's title. So that, in that case, the effect of the recording of the sheriff's deed, as notice, was overcome by other considerations.

The general rule in this jurisdiction is that the recording of an instrument affecting the title to real property constitutes constructive notice to all parties interested, of the contents, and the estate claimed thereby. Ryan v. Woodin, 9 Idaho 525, 75 P. 261; Ames v. Howes, 13 Idaho 756, 93

P. 35; Quinlan v. Pearson, 71 Idaho 26, 225 P.2d 455; Anno. 121 A.L.R. 1411.

"While it is stipulated that the appellants did not know of their interest in those lots until about a year before this suit was brought, that makes no difference, for they had the means of acquiring that knowledge, as the deed conveying the title to said lots to their father was of record during all that time in the office of the county recorder of Ada county, where said lots were situated. The means of acquiring this knowledge was open to them, and, under the facts of this case, that places them in the same position as though they had such knowledge. When one by his own carelessness or negligence fails to acquire knowledge that is within his reach, and such information is upon the proper records which impart constructive notice, the person cannot protect himself behind the plea that he did not know facts of which the law imputes knowledge to him and thus suspend the running of the statute.

It was held in State [ex rel. Graham] v. Walters, 31 Ind.App. 77, 66 N.E. 182, 99 Am.St.Rep. 244, that neither the ignorance of a person of his right to bring an action, nor the mere silence of a person liable to the action, prevents the running of the statute of limitation." Coe v. Sloan, 16 Idaho 49, 100 P. 354, 357.

At the time of the conveyance by the joint tenants to Daniel Kennedy, and the payment to appellants' mother of their share of the proceeds, the appellants were minors, 12, 15 and 17 years of age. The statute of limitations, of course, did not commence to run against them until they reached majority. Sec. 5–213, I.C. The youngest came of age in 1927, 22 years before they appeared to assert their rights in this action. Even though they were non-residents of the state, that is too long a period of sleeping on their rights, to permit them now to assert that they did not have notice of the character of the possession of their uncle and aunt, Daniel and Pearl Kennedy, or that they were ignorant of their rights or of any fraud or mistake that may have been involved in the distribution or sale of the estate of their uncle William. The record fully supports the findings and judgment of the trial court that the appellants' claims are barred not only by limitations, but by laches as well. Secs. 5–203, 5–204, 5–206, 5–207, 5–208, 5–213, I.C.; Boise City v. Wilkinson, 16 Idaho 150, 102 P. 148; Bayhouse v. Urquides, 17 Idaho 286, 105 P. 1066; Wilson v. Linder, 21 Idaho 576, 123 P. 487, 42 L.R.A., N.S., 242; Bolen v. Baker, 69 Idaho 93, 203 P.2d 376; Feliz v. Feliz, 105 Cal. 1, 38 P. 521; Johns v. Scobie, 12 Cal.2d 618, 86 P.2d 820, 121 A.L.R. 1404; Akley v. Bassett, 189 Cal. 625, 209 P. 576; Neher v.Armijo, 9 N.M. 325, 54 P. 236; McCullough v. McCullough, 109 Kan. 497, 200 P. 298; Black v. Beagle, Wyo., 139 P.2d 439, 140 P.2d 594, 148 A.L.R. 243; Hodgson v. Fed. Oil & Dev. Co., 274 U.S. 15, 47 S. Ct. 502, 71 L.Ed. 901, 54 A.L.R. 869; Anno. 27 A.L.R. 8; Anno. 71 A.L.R. 444; Anno. 121 A.L.R. 1411; 2 C.J.S., Adverse Pos-

session, § 99; 30 C.J.S., Equity, § 112. This conclusion renders consideration of other assignments unnecessary.

·Judgment affirmed. Costs to respondents.

GIVENS, C. J., and PORTER, THOMAS and KEETON, JJ., concur.