111 P.3d 73

HAYDEN LAKE FIRE PROTECTION DISTRICT, and all other corporations, entities, or individuals similarly situated, Plaintiffs–Appellants–Cross Respondents,

v.

James M. ALCORN, Manager of the State Insurance Fund; Drew Forney, former Manager of the State Insurance Fund; W.W. Deal, Milford Terrell, Gerald Geddes, Wayne Meyer, and Marguerite Mc Laughlin, Directors of the State Insurance Fund; the State Insurance Fund, an independent body corporate politic, Defendants–Respondents–Cross Appellants,

and

State of Idaho, acting by and through the Department of Administration; and State of Idaho, ex rel., Governor Dirk Kempthorne, Intervener, Defendants–Respondents.

Kelso & Irwin, P.A., Plaintiff–Appellant–Cross Respondent,

v.

State Insurance Fund, and Drew Forney, Manager of the State Insurance Fund, individually, pursuant to I.C. 72–907, Defendants–Respondents–Cross Appellants,

and

State of Idaho, acting by and through the Department of Administration, Defendants–Respondents.

No. 28996.

Supreme Court of Idaho,
Coeur d'Alene, October 2004 Term.

Feb. 28, 2005.

Rehearing Denied April 26, 2005.

Ball Janik LLP, Portland, Oregon; Starr Kelso, Coeur d'Alene, for appellant's Hayden Lake Fire Protection District, et al. James T. McDermott argued.

Lawrence G. Wasden, Attorney General, Boise, for respondents Alcorn et al. and State Insurance Fund. Michael S. Gilmore argued.

Lawrence G. Wasden, Attorney General, Boise, for respondents State of Idaho, Dept. of Administration. Brian P. Kane argued.

SCHROEDER, Chief Justice.

Hayden Lake Fire Protection District (HLFPD) and Kelso & Irwin, P.A. (Kelso) brought this action against the Idaho State Insurance Fund (SIF) and the State of Idaho (State) challenging the SIF's practices relating to management of its surplus and dividends, and certain real estate investments the SIF made with the State. The district court denied Kelso's and HLFPD's motions for summary judgment, granted the SIF's and the State's motions for summary judgment, and entered two Final Judgments in favor of the SIF and the State. HLFPD appeals, and the SIF cross-appeals.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

The SIF was created by the 1917 Workmen's (now Workers') Compensation Act (WCA) to provide workers' compensation in-

surance for Idaho employers. Except for a five-member Commission that ran the SIF from 1939 to 1941, the SIF has been directed by one Manager. From 1917 to 1919 the SIF's surplus, reserve, and premium rates were subject to State Insurance Commission approval, but since 1919 the Manager has had the authority to set surplus and reserves without outside approval and to declare dividends in his discretion.

The Manager is charged with setting premium amounts "at the lowest possible rate consistent with the maintenance of a solvent state insurance fund and the creation of a reasonable surplus and reserve." I.C. § 72–913 (2004). Before 1998, I.C. § 72–911, entitled "Surplus and reserve," provided a framework for the SIF's retention of a percentage of premiums to be set aside for the Fund's surplus. The statute provided that:

> "Ten per centum (10%) of the premiums collected from employers insured in the fund shall be set aside by the manager for the creation of a surplus until such surplus shall amount to the sum of $100,000, and thereafter 5 per centum (5%) of such premiums until such time as in the judgment of the manager such surplus shall be sufficiently large to cover the catastrophe hazard and all other unanticipated losses."

The SIF's Managers interpreted the statute as setting forth the minimum amount of premiums the SIF could retain for surplus. The surplus has always consisted of more than 5% of premiums, while dividends were or were not declared at the discretion of the Manager.

In 1998 the Legislature amended the SIF's governing statutes, making the SIF subject to the Idaho Insurance Code. The district court found that the restrictions on investments that apply to all insurers in Idaho applied to the SIF both before and after 1998. A Board of Directors was created to appoint the SIF Manager. I.C. § 72–911, containing the percentages relating to the amount of premiums to be set aside for surplus, was repealed. In general the Manager's authority with respect to setting surplus and reserve levels and declaring dividends was not affected by the amendments.

The SIF's ability to invest its funds is similar to that of other insurers in Idaho. I.C. § 72–912 provides that the SIF may "invest any of the surplus or reserve funds belonging to the state insurance fund in real estate and the same securities and investments authorized for investments by insurance companies in Idaho." Before 1998, I.C. § 72–902 contained a paragraph specifically describing the SIF's ability to invest in office space ("The state insurance manager may acquire real property as a site for an office building.").

Idaho's Insurance Code is located in Title 41. Regarding real estate investments, I.C. § 41–728(1) states that "[a]n insurer may acquire, invest in, own, maintain, alter, furnish, improve, manage, lease and convey the following real estate only: (a) land and buildings used for home office purposes . . . . (f) real estate for the production of income, under lease, or being constructed under a definite agreement providing for lease. . . ." Subsection (3) provides "An insurer may lease to others part of real property otherwise occupied by it for home office and other purposes under subsection (1)(a) above. . . ." Thus, the SIF is authorized to enter into lease agreements for the production of income.

Like other Idaho insurers, the SIF is also permitted to invest in mortgage loans and contracts, subject to certain limitations. I.C. § 41–722 provides that "[n]o mortgage loan or investment therein upon any one (1) parcel of real property shall exceed in amount, at the time of acquisition, seventy-five per cent (75%) of the fair value of the property. . . ." Pursuant to these statutes, the SIF made a number of real estate investments in State buildings.

## B. Procedural History

### 1. *Kelso & Irwin, P.A. v. State Ins. Fund,* 134 Idaho 130, 997 P.2d 591 (2000).

In 1996 Kelso filed a Complaint against the SIF alleging that the SIF's sale of workers' compensation insurance at artificially low premiums threatened the fund's surplus. The Complaint arose out of a 1996 law enabling the SIF to sell workers' compensation

insurance to farm workers and lowering the minimum premium for qualifying small employers. The Complaint sought injunctive relief and attorney fees. No jury trial was demanded.

Kelso filed a First Amended Complaint in 1998, alleging that the SIF was retaining premiums for its surplus in excess of the amount authorized by statute. Kelso also challenged an SIF investment in State property, alleging that the SIF had squandered its assets on terms unreasonably favorable to the State. The State was added as a defendant. No jury trial was demanded.

The district court granted the SIF's motion to dismiss the First Amended Complaint. Kelso appealed to the Supreme Court. This Court held that the SIF's policyholders had no property interests in the SIF's assets and that the SIF could not be estopped from denying that its policyholders had any property interest in its surpluses and reserves. The Court held that the sale of insurance policies at the lower premiums did not breach the policyholders' insurance contracts with the SIF. However, the Court determined that because the statutes governing the SIF were "necessarily part of Kelso's contract with the SIF, and Kelso has alleged a violation of these statutory provisions, we believe Kelso has alleged sufficient facts to support a cause of action for breach of contract." *Kelso & Irwin, P.A. v. State Ins. Fund,* 134 Idaho 130, 140, 997 P.2d 591, 601 (2000).

### 2. HLFPD's Lawsuit

In January of 2000, while a final decision by the Supreme Court in *Kelso* was pending, HLFPD filed a Complaint against the SIF, James Alcorn as Manager of the SIF, Drew Forney, a former Manager of the SIF, the Directors of the SIF, the Department of Administration, and the State. The Complaint contained many claims similar to those asserted in *Kelso,* so the action was stayed pending resolution of that case.

After this Court remanded *Kelso* to the district court, it was consolidated with HLFPD's case, and the case was certified as a class action. HLFPD was named as class representative for all private policyholders

and public policyholders other than the State. The State was permitted to intervene as a defendant. HLFPD filed an Amended Consolidated Complaint on November 10, 2000, alleging breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, money had and received, rescission, declaratory relief, injunction, equitable accounting, and attorney fees. HLFPD demanded a jury trial pursuant to I.R.C.P. 38(b).

On March 5, 2001, the district court entered an Order striking the demand for a jury trial as untimely. HLFPD filed a motion for jury trial under I.R.C.P. 39. The district court denied the motion.

The parties brought cross-motions for partial summary judgment. On July 27, 2001, the district court entered the first of three Memorandum Opinion and Orders at issue in this appeal. The district court dismissed the claims against the SIF Directors as individuals. In regards to the claims that the SIF violated former I.C. § 72–911 by setting aside more than 5% of premiums for surplus, the district court determined that the statute was ambiguous. The "5%" language could be reasonably interpreted as a minimum or a maximum amount of premiums to be set aside for surplus. The court refused to give *Simplot* deference to the SIF's longstanding interpretation of the statute as a minimum amount of premiums for surplus since it held that the SIF was not a state agency granted the authority to interpret its governing statutes. *J.R. Simplot Co., v. Idaho State Tax Comm'n,* 120 Idaho 849, 820 P.2d 1206 (1991). The court determined that the legislative intent behind I.C. § 72–911 was that it was a start-up provision, designed to help the SIF quickly build its surplus. The district court focused on the language in I.C. § 72–911 which provided the SIF Manager with discretion to maintain a "sufficiently large" surplus. The district court found that this language supported the SIF's contention that the solvency of the SIF was the main motivation behind I.C. § 72–911. Any limits on the amount of premiums the SIF Manager could set aside for surplus had to be read in conjunction with the language placing the amount of surplus in the Manager's discre-

tion. The district court granted summary judgment in favor of the SIF on the claim that its retention of premiums for surplus violated former I.C. § 72–911.

The district court rejected the SIF's argument that an agency's discretionary decisions are not reviewable in court. The district court found that IAPA did not apply to this case but determined that the judicial review provisions of the IAPA were relevant. The district court reviewed the Manager's actions with respect to surplus and dividends under an "arbitrary, capricious, or an abuse of discretion" standard.

The district court determined that the implied covenant of good faith and fair dealing impacts all of the terms of the SIF's contracts with its policyholders, finding that any statutory violation that constituted a breach of the SIF's contracts would also implicate the covenants of good faith and fair dealing. The district court determined that the SIF had no fiduciary duties to policyholders in the management of the SIF's funds.

The district court determined that since the SIF's managers and directors were analogous to directors of a corporation, the business judgment rule was helpful in clarifying the "abuse of discretion" standard used to review their actions. The SIF acted within the scope of its statutory authority, its actions were in good faith, and it reasonably believed such actions to be in the best interests of the corporation. Finding that the SIF had not breached its contracts or implied covenants, the district court granted summary judgment to the SIF on all surplus and dividend issues.

The district court examined the terms of the real estate transactions between the SIF and the State and determined that it was unclear whether the deals were true leases or disguised mortgage loans. If the deals were mortgage loans, the SIF would have violated I.C. § 41–722, which provides that an insurer can only loan up to 75% of the value of a parcel of property in a mortgage loan. It was undisputed that the SIF provided 100% of the funding for its deals with the State.

The district court found that even if the real estate transactions were lawful, the Manager's actions would still need to be reviewed for an abuse of discretion. If the deals were "grossly unfavorable" to the SIF, then the Manager may have abused his discretion. Since such a finding was related to the legality of the transactions, the court denied summary judgment to the SIF on the Plaintiffs' breach of contract and breach of implied covenant claims relating to the real estate investments.

Summary judgment was granted to the SIF on the claims that it breached its fiduciary duties to policyholders in the real estate transactions. The district court denied summary judgment on the claims challenging the legality of the real estate transactions with the State. Summary judgment was also denied on the claims that the deals were unreasonably favorable to the State, causing damage to the SIF and its policyholders. The district court denied summary judgment on the causes of action seeking declaratory and injunctive relief and attorney fees.

### 3. November 14, 2001 Memorandum Opinion and Order

In its second memorandum the district court granted the State's motion to amend its Answer to assert additional affirmative defenses and denied the Plaintiffs' motion to strike the affirmative defenses. In addition, the district court determined that, because the real estate transactions involved public entities, the transactions were entitled to the "presumption of regularity" commonly afforded to actions of public officials. Consequently, the burden of proving the unreasonableness of the transactions was on Kelso and HLFPD.

The district court determined that the 3–year statute of limitations applied to Kelso and HLFPD's claims against the State, except for the unjust enrichment claim, which triggered the 4–year statute of limitations. The district court cited to *Dietrich v. Copeland Lumber Co.*, 28 Idaho 312, 318, 154 P. 626, 628 (1916), for the proposition that, for the purpose of determining the applicable statute of limitations, a "statutory liability ... is one that depends for its existence on

the enactment of the statute and not on the contract of the parties." Though the court recognized that this holding was not controlling in light of this Court's finding in *Kelso* that the contracts incorporated the SIF's statutory framework, the court explained that *Dietrich* supported its determination that the gravamen of the claims, and not the pleadings, should dictate the appropriate limitations period. Thus, since the claims would not exist "but for" the statutes, the court applied the 3–year statute of limitations to the contract claims and determined that the claims accrued on the effective dates of the leases.

The most recent SIF/State real estate transaction was entered into on July 14, 1994. Any Complaint arising out of this transaction would have to have been filed by July 14, 1997. The district court held that all of Kelso's and HLFPD's breach of contract and breach of implied covenant claims relating to the real estate transactions were time-barred, granting summary judgment to SIF on these issues.

Applying the 4–year statute of limitations to the unjust enrichment claims, the district court determined that these claims were also time-barred, except for Kelso's claim relating only to the Boise Cascade building. The district court also held that Kelso's claim against the State for unjust enrichment was not barred by laches. The court found it unnecessary to consider whether the plaintiffs were third-party beneficiaries of the contracts between SIF and the State since the breach of contract claims were time-barred. Since Kelso and HLFPD had no property interest in the SIF's funds, it could not be said that they conferred a benefit on the State in the deals between the SIF and the State. Therefore, the district court granted summary judgment to the State on this claim.

The district court determined failure to file a tort claim under the Idaho Tort Claims Act was moot since the breach of fiduciary duties claims had been dismissed on summary judgment. The district court also found that the Plaintiffs did not need to file a claim with the Board of Examiners.

The district court addressed the State of Idaho's arguments on the doctrine of sovereign immunity and separation of powers as they were relevant to the claims for declaratory and injunctive relief, the only claims that survived summary judgment up to this point. The district court found that SIF's authority to enter into contracts of insurance, as well as the fact that it performed proprietary functions and did not have the authority to enforce or interpret its statutes led to the conclusion that claims against the SIF could not be barred by the doctrine of sovereign immunity. The district court noted that the courts have the ability to review unlawful actions of state officials.

The district court determined that the Plaintiffs' causes of action seeking rescission, reformation, restitution and disgorgement were moot. However, the court denied summary judgment on the claims for prospective declaratory and injunctive relief.

The district court examined the SIF's arguments that any claims for prospective relief should be dismissed on the grounds of lack of standing, mootness, and jurisdictional considerations. The court found that Plaintiffs fit within the class of persons that have standing to seek declaratory relief under I.C. § 10–1202. They had standing to seek injunctive relief based on their contracts with the SIF. In addition, the claims were not moot since they were prospective in nature.

The district court held that it, and not the Department of Insurance, had jurisdiction over the declaratory and injunctive relief claims since they stem from statutes over which the courts have authority and they are within the court's inherent equitable powers. The court also noted that no statutes grant the Department of Insurance exclusive jurisdiction over these claims. The court declined to address the Department of Insurance's jurisdiction over the other claims (breach of contract, etc.), finding that such issues were moot due to the summary judgments that had previously been granted in the case.

### 4. July 1, 2002 Memorandum Opinion and Order

In the third and final series of summary judgment motions, the district court ad-

dressed the requests for prospective declaratory and injunctive relief. For the purposes of determining whether injunctive relief was appropriate, the court assumed that the real estate transactions violated the SIF's governing statutes. The court noted that the claim for injunctive relief was not based on any present or threatened actions by the SIF, citing *O'Boskey v. First Fed. Sav. & Loan Assoc.*, 112 Idaho 1002, 1007, 739 P.2d 301, 306 (1987) for the proposition that, "[w]here the conduct causing injury has been discontinued, the dispute is moot and the injunction should be denied." In light of the fact that SIF's statutory structure had changed since 1998, and that there was no evidence that the SIF would engage in similar transactions in the future, the district court determined that there was no basis for injunctive relief. Consequently, the request for a declaratory judgment was moot. The district court granted the SIF's motion for summary judgment on the claims for declaratory and injunctive relief.

### 5. Final Judgments and Appeals

On July 28, 2002, the district court entered two separate Final Judgments in favor of SIF and the State on all claims brought in the *Kelso* case and the HLFPD class action. Kelso and HLFPD appealed. SIF cross-appealed.

## II.

## THE DISTRICT COURT PROPERLY DENIED THE DEMAND FOR JURY TRIAL

HLFPD made a demand for jury trial which was denied by the district court.

### A. Standard of Review

This Court has free review over the timeliness of a party's demand for a jury trial under I.R.C.P. 38(b). *Cf. Parrott v. Wallace*, 127 Idaho 306, 309–10, 900 P.2d 214, 217–18 (Ct.App.1995) (exercising free review over timeliness of demand for jury trial). In regards to a motion for a jury trial under I.R.C.P. 39, this Court reviews the district court's decision for an abuse of discretion.

*Farmers Nat'l Bank v. Shirey*, 126 Idaho 63, 71–72, 878 P.2d 762, 770–71 (1994).

It is arguable that the denial of the demand for jury trial is moot since the issues resolved in this opinion are susceptible to review without the resolution of conflicting inferences. However, the district court referred to the standard recited in *Aberdeen–Springfield Canal Co. v. Peiper*, 133 Idaho 82, 86, 982 P.2d 917, 921 (1999), that when a matter is tried to the court without a jury and evidentiary facts are undisputed "summary judgment is appropriate, despite the possibility of conflicting inferences because the court alone will be responsible for resolving the conflict between the inferences." The district court made reference in its memorandum opinion to the fact that, "[t]he evidence submitted by the plaintiffs and the SIF defendants alike tend to show that SIF was conservatively managed during this period, perhaps even very conservatively managed." It may be this is an inference a jury would not draw from the undisputed facts. Consequently, the Court will address the issue of the demand for jury trial.

### B. The district court properly denied HLFPD's demand for a jury trial as untimely under I.R.C.P. 38(b).

The district court denied HLFPD's demand for a jury trial under I.R.C.P. 38(d), finding that the demand was untimely. According to I.R.C.P. 38(b), a party must demand a jury trial on an issue "not later than fourteen (14) days after the service of the last pleading directed to such issue." If a party fails to demand a jury trial within this timeframe, the right to a jury trial is waived. In addition, I.R.C.P. 38(d) states that, "[a] waiver of trial by jury is not revoked by an amendment of a pleading asserting only a claim or defense arising out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

*In re Kaiser Steel Corp.* states that, "[w]here there are multiple parties, the last pleading by any party on a common issue will determine the time for jury demand." 911 F.2d 380, 388 (10th Cir.1990). *Kaiser Steel* involved the timeliness of the defendant's

jury trial demand that was filed in its answer. Cases relied upon by HLFPD only discuss situations involving a defendant's last pleading. The State maintains that the original parties should not be able to request a jury after any party intervenes. No case holds that the "last pleading" is an intervenor's pleading. This argument is persuasive for purposes of determining the timeliness of an original party's demand for a jury trial.

■ An intervenor has a right to demand a jury trial upon intervention because, unlike the existing parties in the suit, it has not had the opportunity to assert that right. *U.S. v. Cal. Mobile Home Park Mgmt. Co.,* 107 F.3d 1374, 1378–79 (9th Cir.1997); *U.S. v. Country Club Garden Owners Assoc., Inc.,* 159 F.R.D. 400, 404–05 (E.D.N.Y.1995). In *California Mobile Home,* the United States asserted the plaintiff's claims of violation of the Fair Housing Act against the defendants. *Cal. Mobile Home Park,* 107 F.3d at 1375. Three years after the case began, plaintiff moved to intervene. *Id.* at 1376. The district court had held that her demand for a jury trial in her intervenor's complaint was untimely. *Id.* at 1377. The circuit court disagreed, holding that her demand for a jury trial was timely, and should have been granted. *Id.* at 1378.

The court in *California Mobile Home* adopted the reasoning of the *Country Club* court, which recognized the unfairness of denying an intervenor the right to demand a jury. The court stated that:

> "[I]n a typical case a jury demand in a subsequent complaint is untimely unless new material issues are raised.... [T]his rule has been applied in situations where the parties remain the same. After intervention, the parties to the litigation have changed. Indeed, intervening parties have full party status in the litigation commencing with the granting of the motion to intervene." *Id.*

While the court found that the plaintiff-intervenor should be allowed to demand a jury trial, it was careful to limit the holding to guarantee an intervenor's, and not the original parties, right to demand a jury upon intervention. *Id.* at 1378 n. 2 ("We hold only that where the court grants an intervention of right, the intervenor's right to demand a

jury trial is not waived under Rule 38(d)."). Therefore, because the State as intervenor did not demand a jury, no jury was required in this case.

■ HLFPD argues that its Amended Complaint so changed the nature of the case that its right to demand a jury trial was revived. In *City of Pocatello v. Anderton,* 106 Idaho 370, 372, 679 P.2d 647, 649 (1984), this Court held that, "[a]lthough it is true that an amended or supplemental pleading which raises a new issue revives the right to demand a jury trial as to that new issue," where a pleading raises no new issues, the right to demand a jury trial is not revived.

I.R.C.P. 38(d) states that, "a waiver of trial by jury is not revoked by an amendment of a pleading asserting only a claim or defense arising out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Though HLFPD's Amended Complaint was the first pleading filed after the case was certified as a class action, and it expanded the factual allegations and claims, especially with respect to the claims implicating the SIF's investment practices, the foundation of HLFPD's allegations remained unchanged. As this Court indicated in *Farmers Nat'l Bank v. Shirey,* 126 Idaho 63, 71, 878 P.2d 762, 770 (1994), where an amended pleading raises "no additional wholly distinct issues for trial," the right to demand a jury trial is not revived.

■ HLFPD's demand for a jury trial in its Amended Complaint was untimely. The demand was not made within 14 days of the relevant last pleading (the SIF's Answer to the original complaint), and the circumstances surrounding the filing of the Amended Complaint did not change the nature of the case to such an extent that the right to demand a jury trial was revived.

**C. The district court did not abuse its discretion in denying HLFPD's motion for a jury trial under I.R.C.P. 39(b).**

■ HLFPD argues that the district court abused its discretion when it refused to grant HLFPD's motion for a jury trial under

I.R.C.P. 39(b). The relevant language of that rule states that, "notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues." In *R.E.W. Constr. Co. v. Dist. Court of the Third Judicial Dist.*, 88 Idaho 426, 443, 400 P.2d 390, 401 (1965), this Court stated that, "[i]t is essential that, upon a request for a trial of issues by a jury, even after the time for demand for a jury has elapsed, that the trial court liberally exercise its discretion in this regard to carry out the designed purpose of the Idaho Rules of Civil Procedure."

In *Viehweg v. Thompson*, 103 Idaho 265, 269, 647 P.2d 311, 316 (1982), the Court of Appeals stated that the purpose of I.R.C.P. 39(b) is to provide a "limited 'safety valve' against unduly harsh application of the waiver rule." The court determined that the lower court did not abuse its discretion in refusing to grant a motion for a jury trial under I.R.C.P. 39(b). *Id.* The court focused on the fact that the defendant made no showing as to why his jury demand was untimely in the first place. *Id.*

In *City of Pocatello v. Anderton*, 106 Idaho 370, 373, 679 P.2d 647, 650 (1984), this Court affirmed the district court's denial of appellants' motion for a jury trial under I.R.C.P. 39(b). This Court stated that, "[s]ince the matter has been entrusted to the discretion of the trial court, in the absence of proof of abuse of discretion, this court will ordinarily not intervene in the trial court decision. The appellants have given no reason for their failure to make a timely demand.... Therefore, we find no abuse of discretion in denying the request." *Id.* The fact that the appellant presented no reasoning as to why it failed to make a demand within the timeframe provided in I.R.C.P. 38(b) was relevant to the Court's finding that the district court did not abuse its discretion.

HLFPD argues that the district court abused its discretion in denying its motion for a jury trial under I.R.C.P. 39(b). However, HLFPD fails to explain why it did not demand a jury trial in the first complaint it

filed in January of 2000. The district court did not abuse its discretion.

## III.

## THE DISTRICT COURT DID NOT ERR IN CONCLUDING THAT THE SIF COMPLIED WITH FORMER IDAHO CODE § 72–911

### A. Standard of Review

 This Court exercises free review over whether an agency's interpretation of a statute should be afforded *Simplot* deference. *See Canty v. Idaho State Tax Comm'n*, 138 Idaho 178, 183–85, 59 P.3d 983, 988–90 (2002) (reviewing *Simplot* factors to determine whether agency was entitled to deference). In addition, this Court has free review over statutory construction. *State v. Santana*, 135 Idaho 58, 63, 14 P.3d 378, 383 (Ct.App.2000). Whether or not the SIF's interpretation of former I.C. § 72–911 is entitled to *Simplot* deference is a moot issue if the district court's finding that the statute did not place a limit on the amount of premiums the SIF could set aside for its surplus is proper.

### B. The SIF complied with former Idaho Code § 72–911.

 The district court determined that the "5%" language in former I.C. § 72–911 could "be reasonably interpreted to require the SIF manager to set aside at least 5% of collected premiums, no more than 5% of such premiums, or exactly 5% of such premiums." On those grounds, the court found the statute to be ambiguous and engaged in statutory construction.

 This Court has held that, "[a] statute is ambiguous where the language is capable of more than one reasonable construction." *State v. Schwartz*, 139 Idaho 360, 362, 79 P.3d 719, 721 (2003). This statute is ambiguous. When a statute is ambiguous, "it must be construed to mean what the legislature intended it to mean. To determine that intent, we examine not only the literal words of the statute, but also the reasonableness of proposed constructions, the public policy be-

hind the statute, and its legislative history." *Id.*

Idaho Code § 72–913 states that the Manager is to, "fix the rates of premiums therefore based upon the total payroll and number of employees in each of such classes of employment at the lowest possible rate *consistent with the maintenance of a solvent state insurance fund and the creation of a reasonable surplus and reserve.*" (Emphasis added). I.C. § 72–914 directs the Manager to account for "the setting up of reserves *adequate to meet anticipated and unexpected losses and to carry the claims to maturity.*" (Emphasis added). And I.C. § 72–915 allows the Manager in his or her discretion to declare a dividend "[i]f at any time there is an aggregate balance remaining to the credit of any class of employment or industry which the manager deems may be *safely and properly divided.*" (Emphasis added). The district court properly determined that limiting the Manager's discretion would be inconsistent with the legislative intent to ensure the SIF's solvency.

The district court also determined that the legislature intended former I.C. § 72–911 to be a start-up provision, designed to help the SIF build up its funds expediently. This finding is supported by the remaining language of I.C. § 72–911, which states that the Manager is to set aside 5% of premiums for surplus, "until such time as in the judgment of the manager such surplus shall be sufficiently large to cover the catastrophe hazard and all other unanticipated losses."

The language of the statutes governing the SIF, as well as the legislative intent behind former I.C. § 72–911, support the conclusion that it did not place a limit on the amount of premiums the SIF could set aside for surplus. The district court's finding that the SIF did not violate former I.C. § 72–911 is affirmed.

## IV.

### SIF HAS DUTIES TO POLICYHOLDERS REGARDING MANAGEMENT OF SURPLUS AND DIVIDENDS

#### A. Standard of Review

■ The existence of a duty is a question of law over which this Court may exercise free review. *Summers v. Cambridge Joint Sch. Dist. No. 432,* 139 Idaho 953, 955, 88 P.3d 772, 774 (2004).

#### B. By virtue of the incorporation of the SIF's governing statutes into its contracts, the SIF has duties to its policyholders with respect to surplus and dividends.

■ The implied covenant of good faith and fair dealing exists in all contracts in Idaho. *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.,* 121 Idaho 266, 287, 824 P.2d 841, 863 (1991) (citing *Luzar v. Western Sur.,* 107 Idaho 693, 696, 692 P.2d 337, 340 (1984)). In *Idaho First Nat'l Bank,* this Court noted with approval the Washington Supreme Court's definition of the implied covenant of good faith and fair dealing. *Id.* at 288, 824 P.2d at 863. That court stated that, "[t]here is in every contract an implied *duty* of good faith and fair dealing.... It requires only that the parties perform in good faith the obligations imposed in this agreement." *Id.* (quoting *Badgett v. Sec. State Bank,* 116 Wash.2d 563, 569, 807 P.2d 356, 360 (1991)) (emphasis added). This Court stated that, "[o]ur analysis of the implied covenant of good faith and fair dealing is consistent with surrounding states." *Id.*

■ In *Kelso* this Court held that the SIF's governing statutes were incorporated in its contracts with its policyholders. *Kelso,* 134 Idaho at 138, 997 P.2d at 599. *Kelso* also held that policyholders "had a right to rely on the statutes creating and regulating the SIF, and the limits those statutes place on how the SIF can invest its policyholders' premiums." *Kelso,* 134 Idaho at 138, 997 P.2d at 599. This covenant reaches to the SIF's statutory obligations that are incorporated into its contracts. The SIF has duties to its policyholders regarding surplus and dividends by virtue of the fact that the implied covenant of good faith and fair dealing extends to the statutes that are incorporated in the policyholders' contracts. *See also Sec. Officers Serv., Inc. v. State Comp. Ins. Fund,* 17 Cal.App.4th 887, 21 Cal.Rptr.2d 653 (1993). The SIF's argument that it has no

duties to policyholders, at least with respect to dividends, fails. Although the Manager does not have a duty to declare dividends, his discretionary authority to declare dividends is nonetheless subject to the implied covenant of good faith and fair dealing.

## V.

## THE SIF DID NOT BREACH ITS CONTRACTS WITH ITS POLICYHOLDERS AND DID NOT BREACH THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### A. Standard of Review

 This Court has free review over the construction of a statute, *Waters Garbage v. Shoshone County*, 138 Idaho 648, 650, 67 P.3d 1260, 1262 (2003), which includes whether a statute provides for judicial review, and the standard of review to be applied if judicial review is available. This Court has free review over subject matter jurisdiction issues. *Chapple v. Madison County Officials*, 132 Idaho 76, 78, 967 P.2d 278, 280 (1998). This Court also has free review over the district court's determination that the SIF's Manager did not abuse his discretion. *Cf. Hoskinson v. Hoskinson*, 139 Idaho 448, 454, 80 P.3d 1049, 1056 (2003). This Court has free review on the applicability of the implied covenant of good faith and fair dealing as a question of law. *Steiner v. Ziegler-Tamura Ltd., Co.*, 138 Idaho 238, 242, 61 P.3d 595, 599 (2002). In general, in reviewing summary judgment orders, "[t]his Court exercises free review over the entire record ... to determine whether either side was entitled to judgment as a matter of law and reviews the inferences drawn by the district judge to determine whether the record reasonably supports those inferences." *Intermountain Forest Mgmt., Inc. v. Louisiana Pac. Corp.*, 136 Idaho 233, 236, 31 P.3d 921, 924 (2001).

### B. The district court's finding that the SIF's Managers' decisions with respect to surplus and dividends were reviewable was proper.

 The district court's determination that it could review the SIF's surplus and dividend practices is supported by Idaho's Administrative Procedure Act (IAPA), and the specific facts of this case. The district court found that IAPA did not contain a provision precluding judicial review of agency actions that are "committed to agency discretion by law," which is found in the federal counterpart. Thus, it held that IAPA did not restrict judicial review of HLFPD's claims. Additionally, the district court found that this was not a case brought as a petition for judicial review of agency action under IAPA. HLFPD's claims arose out of its contracts with the SIF. Since IAPA does not apply to this case, cases interpreting the federal APA are inapplicable. In addition, reliance on this Court's recent decision in *Westway Constr., Inc. v. Idaho Transp. Dept.*, 139 Idaho 107, 73 P.3d 721 (2003), is not persuasive. That case involved the Department of Transportation, an agency with different functions and authority than the SIF. The district court's finding that the "SIF is not a state agency entrusted by the Legislature with the responsibility to interpret the statutes that govern its operation" also provides support for its exercise of jurisdiction over HLFPD's surplus and dividend claims.

### C. The district court's application of IAPA's "arbitrary, capricious or abuse of discretion" standard was proper.

 Although the district court determined that IAPA did not apply to this case, it found IAPA's judicial review provisions to "enunciate a sound standard" to review the SIF's Managers' and Directors' actions. I.C. § 67-5279 states that the court should affirm agency action "unless the court finds that the action was: ... (d) arbitrary, capricious, or an abuse of discretion." Subsection (a) states that, "the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." The district court found that this standard was relevant considering the fact that the challenged decisions of the Manager and Directors were discretionary. The district court's application of this standard is appropriate.

HLFPD's argument that the business judgment rule should be the standard applied

to review the Managers' and Directors' decisions fails. The SIF is not a private corporation. Its Managers and Directors are entitled to the higher level of deference afforded by the abuse of discretion standard. Regardless, the district court found the business judgment rule to be relevant to the determination of whether the SIF Manager abused his discretion, determining that the SIF Manager satisfied the business judgment rule, if it were applicable. The business judgment rule is less deferential than the "abuse of discretion" standard. If the Manager satisfied that rule, he also did not abuse his discretion. The district court's finding on this point is supported by the record.

### D. The district court's decision that the SIF did not breach any express or implied contractual obligations to its policyholders is proper.

■ The district court determined that the SIF's actions with respect to its surplus and dividend practices did not breach the implied covenant of good faith and fair dealing. The facts in this case are undisputed. The arguments presented by the parties on these issues essentially amount to a dispute over how to interpret the facts. The district judge stated his opinion as follows:

I find that the plaintiffs have failed to show that the SIF managers or members of the board of directors failed to act in good faith, with the care of an ordinarily prudent person in a like position would exercise under similar circumstances, or in a manner reasonably believed to be in the best interest of the SIF (corporation). I am also unable to find that such decisions were outside SIF's statutorily defined powers.

The evidence submitted by the plaintiffs and the SIF defendants alike tend to show that SIF was conservatively managed during this period, perhaps even very conservatively managed. However, this style of management is well within the outer boundaries of the manager's discretion and the reasonable business judgment of the directors, and complies with the statutorily mandated duties of the manager. This is particularly true in light of the financial difficulties, including outright insolvency, of some private workers' compensation insurers and state workers' compensation funds. This conclusion is not changed by evidence that the processes by which these decisions were reached may have been somehow deficient. For similar reasons, I also find that neither the manager nor the directors breached the implied covenants of good faith and fair dealing with regard to decisions concerning surplus and dividends. Therefore, summary judgment will be granted in favor of the SIF defendants on all causes of action concerning SIF's decisions with respect to surplus and dividends. (Internal citations omitted).

The district judge's conclusions were supported by the record.

### VI.

### THE SIF DOES NOT OWE FIDUCIARY DUTIES TO ITS POLICYHOLDERS

#### A. Standard of Review

■ Whether a fiduciary relationship exists is a question of law over which this Court exercises free review. *Cf. Jordan v. Hunter*, 124 Idaho 899, 904–05, 865 P.2d 990, 995–96 (Ct.App.1993).

#### B. The SIF and its officers are not fiduciaries to the SIF policyholders.

■ The district court determined that the SIF could not be analogized to a trust since a trust would create property rights in policyholders, and this Court in *Kelso* specifically held that policyholders had no property interest in the SIF's funds. The district court's finding on this point is affirmed.

The district court determined that a corporate analogy was also unworkable since this Court in *Kelso* held that the SIF was not a mutual insurance company, and the policyholders had no property interests in the SIF's funds. The district court was correct.

HLFPD's argument for a "totality of the relationship" test relies on trust and corporate law analogies, as well as the SIF's literature that does not have any effect as to the SIF's legal status (*see Kelso*, 134 Idaho at

137–38, 997 P.2d at 598–99). This argument fails. The district court's finding that the SIF has no fiduciary duties to its policyholders is affirmed.

## VII.

## THE DEPARTMENT OF INSURANCE DOES NOT HAVE EXCLUSIVE OR PRIMARY JURISDICTION OVER THE REAL ESTATE–RELATED CLAIMS

### A. Standard of Review

Subject matter jurisdiction is a question of law over which this Court has free review. *Chapple v. Madison County Officials,* 132 Idaho 76, 78, 967 P.2d 278, 280 (1998).

### B. The district court's exercise of jurisdiction over HLFPD's real estate investment claims was proper.

■ The district court determined that it had jurisdiction to determine HLFPD's claims for prospective declaratory and injunctive relief as those remedies related to the SIF's real estate investments, holding that the real estate investment claims were justiciable by the district court and not barred by administrative jurisdiction. The district judge stated that, "while the issues that the plaintiffs have raised concerning alleged violations of I.C. § 41–701 *et seq.* that pertain to the 'eligibility' of SIF's real estate investments may be brought as an administrative hearing before the Department of Insurance under I.C. §§ 41–231 through 41–246, there are no statutory provisions that grant the Department of Insurance *exclusive* original jurisdiction in such matters." (Emphasis in original).

In *Kelso* this Court held that plaintiffs had stated a claim for breach of contract based on its allegations that, "the SIF has squandered assets and acted beyond its statutory authority by purchasing certain real property and then leasing that property to the State." *Kelso,* 134 Idaho at 140, 997 P.2d at 601. HLFPD brought the real estate-related claims at issue in this case based on its contract of insurance with the SIF. HLFPD is arguing that the SIF's investment practices breached its contracts and the implied covenants in those contracts. The district court's exercise of jurisdiction over HLFPD's contract-related claims was proper.

■ *Westway Constr., Inc. v. Idaho Transp. Dept.,* 139 Idaho 107, 73 P.3d 721 (2003), relied upon by the SIF, is distinguishable. That case involved a public works contractor seeking relief from its bid due to a mistake. *Id.* at 110, 73 P.3d at 725. In order to obtain relief from the bid, the contractor was required to satisfy a number of conditions set forth in I.C. § 54–1904C. *Id.* This Court framed the issue as one of whether the dispute was a "contested case" under the APA. *Id.* at 111, 73 P.3d at 726. If so, the Idaho Transportation Department, the solicitor of the bid at issue, would have primary jurisdiction. *Id.* at 110, 73 P.3d at 725. Courts apply a two-part test to determine whether a matter is a contested case requiring agency adjudications: 1) whether the legislature has "granted the agency the authority to determine the particular issue"; and 2) whether the agency decision on the issue determines " 'the legal rights, duties, privileges, immunities, or other legal interests' of one or more persons." *Id.* at 111, 73 P.3d at 726 (internal citations omitted).

This Court determined that I.C. § 54–1904C's language providing that the bidder had to establish the statutory conditions "to the satisfaction of the public entity" to which it had submitted its bid meant that the Idaho Transportation Department as solicitor of the bid had the authority to determine whether the conditions were satisfied. *Id.* at 111, 73 P.3d at 726. This Court also found that this decision by the Idaho Transportation Department constituted a determination of the contractor's "legal rights, duties, privileges, immunities, or other legal interests." *Id.* Thus, this Court held that the contractor's claim needed to be brought in front of the Idaho Transportation Department.

In the case at hand the "particular issue" before this Court is whether the SIF's real estate investment practices breached its contracts or implied covenants with its policyholders. This differs from the issue in *Westway* concerning the satisfaction of statutory conditions before a bid could be revoked

because of mistake. There is no agency that must find HLFPD satisfied statutory conditions before HLFPD can assert its breach of contract and implied covenant claims. The issues in this case do not depend for their existence on the satisfaction of any preliminary statutory conditions that are the subject of an agency's authority. The district court's exercise of jurisdiction over the claims was proper.

The SIF's assertion that the district court should have deferred to the expertise of the Department of Insurance under the doctrine of primary jurisdiction also fails. The SIF relies on a footnote in *Briggs v. Golden Valley Land & Cattle Co.*, 97 Idaho 427, 435 n. 6, 546 P.2d 382, 391 n. 6 (1976), in support of its primary jurisdiction argument. However, that case did not decide whether the district court should have found the Department of Water Resources had primary jurisdiction. *Id.* The Court stated, "our decisions have neither foreclosed the district court from nor required it to defer primary jurisdiction to the director." *Id.* The Court will not impose any requirement that the Department of Insurance have primary jurisdiction where such a requirement is not expressly stated in the SIF's statutes.

The district court's exercise of jurisdiction over HLFPD's real estate investment claims was proper.

## VIII.

### THE DISTRICT COURT DID NOT ERR IN APPLYING THE PRESUMPTION OF REGULARITY TO THE ACTIONS OF THE SIF AND THE STATE

#### A. Standard of Review

■ This Court has free review to determine the applicability of a presumption as a question of law. *Cf. In re SRBA Case No. 39576*, 128 Idaho 246, 256, 912 P.2d 614, 624 (1995).

#### B. The presumption of regularity applies to the actions of the SIF and the State in this case.

■ The district court held that the presumption of regularity applied to the actions taken by the SIF and the State in the real estate transactions challenged by HLFPD, citing *Roper v. Elkhorn at Sun Valley*, 100 Idaho 790, 793, 605 P.2d 968, 971 (1980), which stated that, "[t]here is in Idaho, as in most states, a presumption of regularity in the performance of official duties by public officers." This conclusion was proper.

HLFPD's reliance on *Weatherby v. Weatherby*, 94 Idaho 504, 492 P.2d 43 (1972) is misplaced. *Weatherby* specifically focused on the fiduciary relationship between directors of a corporation and the shareholders, and the breach of fiduciary duties that results when a director personally profits at the shareholders' expense. *Id.* at 506, 492 P.2d at 45. SIF is not a corporation. Policyholders have no property interest in SIF funds. SIF is not a fiduciary to its policyholders. There is direct authority applying a presumption of regularity to decisions of public officials in Idaho, while there is no authority applying an "insider trading" analysis to public officials' actions. The district court's holding is affirmed.

## IX.

### THE DISTRICT COURT'S APPLICATION OF THE THREE–YEAR STATUTE OF LIMITATIONS FOR STATUTORY VIOLATIONS TO THE REAL–ESTATE RELATED CLAIMS WAS PROPER

#### A. Standard of Review

■ The determination of the applicable statute of limitation is a question of law over which this Court has free review. *Cf. Oats v. Nissan Motor Corp. in the U.S.A.*, 126 Idaho 162, 164–72, 879 P.2d 1095, 1097–1105 (1994).

#### B. The district court properly applied the three-year statute of limitation for a "liability created by statute" to HLFPD's real-estate related claims.

■ There is no Idaho law directly on point as to whether the 3–year statute of limitations for statutory violations or the 5–year statute for breach of contract applies

when a contract incorporates a statute and the allegations stem from violations of those statutes. The district court's application of the three-year statute of imitations stemmed from its finding that the gravamen of HLFPD's claims were grounded in statute.

In *Kelso* this Court held that Kelso's claims that the SIF "acted beyond its statutory authority" in real estate investments with the State survived a motion to dismiss. *Id.* at 140, 997 P.2d at 601. This holding was premised on this Court's determination that the SIF's governing statutes were incorporated into its contracts with its policyholders. *Id.* at 138, 997 P.2d at 599. This Court did not make any findings as to the statute of limitation that would apply to the claims.

HLFPD's breach of contract and implied covenant claims are based on alleged statutory violations. The district court looked to *Dietrich v. Copeland Lumber Co.*, 28 Idaho 312, 154 P. 626 (1916), which held that the statute of limitation for a statutory liability applied, despite the fact that the case was brought as an action to collect on promissory notes. This Court reasoned that, "[a] 'statutory liability' is one that depends for its existence on the enactment of the statute, and not on the contract of the parties." *Id.* at 318, 154 P. at 628 (quoting 4 Words and Phrases, Second Series, 686). Though the district court recognized that *Dietrich* may not be controlling in light of this Court's *Kelso* decision, it stated that "[*Dietrich*] is useful in support of the proposition that the true *gravamen* of the plaintiffs' claims should control the question of which statute of limitations is applicable, rather than the manner in which the claims are actually pled." This conclusion is correct.

## X.

## THE DISTRICT COURT PROPERLY CONCLUDED THAT THE REAL ESTATE–RELATED CLAIMS ACCRUED ON THE DATE THAT THE GROUND AND IMPROVEMENT LEASES BETWEEN THE SIF AND THE STATE BECAME EFFECTIVE

### A. Standard of Review

■ This Court has free review over whether the discovery rule applies to a claim.

*Cf. Lapham v. Stewart*, 137 Idaho 582, 587, 51 P.3d 396, 401 (2002). "[W]hen a cause of action accrues may be a question of fact or law. If no disputed issues of material fact exist, when a cause of action accrues is a question of law for determination by this Court." *C & G., Inc. v. Canyon Hwy. Dist. No. 4*, 139 Idaho 140, 142, 75 P.3d 194, 196 (2003) (citation omitted).

### B. The discovery rule does not apply to HLFPD's claims.

■ HLFPD appeals the district court's ruling that the real estate claims accrued on the effective date of the leases, arguing the applicability of a discovery rule relying on courts in other jurisdictions that extend the discovery rule to breach of contract claims. HLFPD argues in the alternative that the real estate claims did not accrue until the conclusion of the transactions between the SIF and the State. *See, e.g., Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Amer.*, 182 Ariz. 586, 898 P.2d 964 (1995); *Bauman v. Day*, 892 P.2d 817, 828 (Alaska 1995). None of the cases cited by HLFPD in support of its argument for application of the discovery rule involve public governmental information.

There is a right to inspect public records under I.C. § 9–338 which states that, "[e]very person has a right to examine and take a copy of any public record of this state and there is a presumption that all public records in Idaho are open at all reasonable times for inspection except as otherwise expressly provided by statute." An examination of the specific SIF–State real estate transactions at issue in this case reveals that each transaction was publicly approved. The Williams Building investment was approved by the Ada County District Court. The Board of Examiners also approved the Williams Building, as well as the Law Enforcement, Parks & Recreation, and Boise Cascade Building investments.

This Court's opinion in *Chapin v. Stewart*, 71 Idaho 306, 311, 230 P.2d 998, 1001 (1951), is instructive. This Court stated:

"[t]he means of acquiring th[e] knowledge was open to them, and, under the facts of this case, that places them in the same position as though they had such knowledge. When one by his own carelessness or negligence fails to acquire knowledge that is within his reach, and such information is upon the proper records which impart constructive notice, the person cannot protect himself behind the plea that he did not know facts of which the law imputes knowledge to him and thus suspend the running of the statute [of limitations]." *Id.* Though *Chapin* involved constructive notice resulting from the recording of an instrument, its reasoning is persuasive in the case at hand. HLFPD cannot claim the benefit of a discovery rule simply because it did not know all of the facts of the real estate transactions until a few years ago. The information was available since the inception of the leases.

### B. HLFPD's real estate-related claims accrued on the effective date of the leases.

■ The district court stated that HLFPD's "allegations ... contend that these contracts were a violation of the statutory terms of the contracts between the SIF and its policyholders *ab initio.*" The district court also noted that the Insurance Code provides that the eligibility of an investment is to "be determined as of the date of its making or acquisition." Thus, since HLFPD's claims challenged the eligibility of the SIF's investments, the district court held that HLFPD's real estate-related claims accrued at the moment the SIF and the State entered into the agreements. The district court's holding is proper.

HLFPD's argument for a "project completion rule" fails. *C & G v. Canyon Highway Dist. No. 4,* 139 Idaho 140, 75 P.3d 194 (2003) was an inverse condemnation case. This Court was persuaded that, "the nature of the government's wrongdoing, a continuing construction project, required a different standard for determining when the notice period was triggered." *Id.* at 143, 75 P.3d at 197. The case at hand does not involve a continuing invasion of property rights. HLFPD's

real estate claims are time-barred. The district court's holding is affirmed.

### XI.

### THE DISTRICT COURT DID NOT ERR IN RULING THAT PLAINTIFFS ARE NOT ENTITLED TO PROSPECTIVE INJUNCTIVE RELIEF

HLFPD disputes the district court's ruling denying prospective relief, maintaining that the district court's ruling was "based solely upon the SIF's assertion that it 'won't do it again.'"

### A. Standard of Review

■ "The standard of review regarding a grant or denial of an injunction is abuse of discretion." *Miller v. Bd. of Tr.,* 132 Idaho 244, 245–46, 970 P.2d 512, 513–14 (1998), *cert. denied,* 526 U.S. 1159, 119 S.Ct. 2050, 144 L.Ed.2d 216 (1999).

### B. The district court did not err in denying HLFPD's request for prospective relief.

The district court found that a determination of the availability of injunctive relief would be dispositive on the claims for declaratory relief. It determined that there was no evidence that the SIF was threatening to enter into similar real estate deals in the future. Thus, the district court held that injunctive relief was improper, making declaratory relief also improper because there was no "real or substantial controversy" requiring such relief.

For the purpose of determining the appropriateness of injunctive relief, the district court assumed that the SIF/State past real estate investments were unlawful. The district court cited to *O'Boskey v. First Fed. Sav. & Loan Assoc.,* 112 Idaho 1002, 1007, 739 P.2d 301, 306 (1987), for the proposition that, "injunctions should issue only where irreparable injury is actually threatened. Where the conduct causing injury has been discontinued, the dispute is moot and the injunction should be denied.... The trial court must be convinced that 'there is no reasonable expectation that the wrong will be repeated.'" (internal citations omitted).

There is no evidence that the SIF contemplates entering into similar real estate transactions. In addition, the SIF's governing statutes have changed since the last real estate transaction occurred, indicating that similar real estate deals are unlikely to occur in the future. The district court did not abuse its discretion in refusing to grant prospective injunctive relief to HLFPD.

The district court cited to *Harris v. Cassia County*, 106 Idaho 513, 516, 681 P.2d 988, 991 (1984), for this Court's explanation of the requirements for declaratory relief. This Court stated that, "[i]t must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* Because there is no threatened injury to HLFPD warranting injunctive relief, the request for declaratory relief is moot. There is no "real and substantial controversy" involving any of the SIF's potential future investments.

The district court's refusal to grant prospective relief is affirmed.

## XII.

### THE DISTRICT COURT DID NOT ERR IN FINDING THAT PLAINTIFFS FAILED TO STATE A CLAIM OF UNJUST ENRICHMENT AGAINST THE STATE

HLFPD argues for reversal of the district court's determination that it failed to state an unjust enrichment claim against the State. Specifically, HLFPD claims that the district court erred in finding that it had not conferred a benefit on the State, citing to *Hausam v. Schnabl*, 126 Idaho 569, 887 P.2d 1076 (1994), for the proposition that a direct benefit is not necessary to state a claim of unjust enrichment, and an indirect benefit will suffice.

### A. Standard of Review

A claim for unjust enrichment is an issue of law over which this Court may exercise free review. *Marshall v. Bare*, 107 Idaho 201, 206, 687 P.2d 591, 596 (referring to unjust enrichment claim as an issue of law).

### B. The district court correctly ruled that HLFPD had failed to state a claim for unjust enrichment against the State where policyholders conferred no benefit to the State.

In *Beco Constr. Co., Inc. v. Bannock Paving Co.*, 118 Idaho 463, 797 P.2d 863 (1990), a construction company brought an action against a subcontractor that was awarded a job on a Department of Energy project. The construction company claimed that the subcontractor received the contract under a Small Business Administration (SBA) set-aside program for which it did not meet the requirements. *Id.* at 464, 797 P.2d at 864. The construction company alleged that the subcontractor was unjustly enriched by being awarded the contract. *Id.* This Court held that the company's unjust enrichment claim failed because it had conferred no benefit on the subcontractor. *Id.* at 467, 797 P.2d at 867. The Court found the lack of legal relationship between the company and the subcontractor persuasive. *Id.* The Court discussed a number of other Idaho cases involving unjust enrichment claims and noted that "in each of these cases the plaintiff and defendant had a contractual relationship or a claim to real property which were the underlying reasons for the unjust enrichment or quasi contract claims between the parties." *Id.* The Court recognized that it "continues to require for an unjust enrichment recovery that the plaintiff confer some benefit on the defendant which would be unjust for the defendant to retain." *Id.*

This case is similar to *Beco* in that HLFPD's unjust enrichment claim against the State does not arise out of any cognizable legal relationship between the parties. The State may have received a benefit from the SIF in the real estate transactions, but it did not receive that benefit from the policyholders. As this Court noted in *Kelso*, the SIF's policyholders have no property interest in the SIF's funds. *Kelso*, 134 Idaho at 135, 997 P.2d at 596. Any benefit conferred on the State was not conferred by the policy-

holders. The district court's dismissal of the unjust enrichment claim is affirmed.

## XIII.

### CONCLUSION

The district court's denial of HLFPD's requests for a jury trial under I.R.C.P. 38 and 39 was proper. Former I.C. § 72–911 did not limit the amount of premiums the SIF could set aside for surplus. The SIF has duties to its policyholders regarding its management of surplus and dividends. These include the implied covenant of good faith and fair dealing. However, the SIF did not breach the implied covenant or its contracts with policyholders in its management of surplus and dividends. The SIF is not a fiduciary to its policyholders. The district court properly exercised its jurisdiction over HLFPD's investment-related claims. A presumption of regularity applied to actions taken by the SIF and the State in the real estate transactions. The three-year statute of limitations for statutory violations applied to HLFPD's real estate-related claims, and the statute accrued on the effective date of the lease agreements. Thus, all of HLFPD's real estate-related claims were time-barred. The denial of prospective relief was proper. The finding that HLFPD failed to state a claim for unjust enrichment against the State was also proper. Alternative grounds presented by the State to affirm the decision of the district court need not be reviewed.

The judgments entered in the district court are affirmed. The issue of costs and attorney fees are addressed in the companion case of *Hayden Lake Fire v. Alcorn,* No. 29715, 141 Idaho 307, 109 P.3d 161, 2005 WL 458694 (2005).

Justice KIDWELL, EISMANN, and BURDICK and Pro Tem Justice WALTERS concur.